UNITED STATES of America, Appellee,

v.

James D. CARTER,
Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Michael F. MURRAY,
Defendant, Appellant.

Nos. 84–1262, 84–1263.

United States Court of Appeals,
First Circuit.

Submitted July 21, 1986.

Decided Oct. 7, 1986.

Marshall D. Stein, Cherwin & Glickman,
Brian J. McMenimen and Gargiulo &

McMenimen, Boston, Mass., on brief for
James D. Carter.

Gary C. Crossen, Asst. U.S. Atty., and
William F. Weld, U.S. Atty., Boston, Mass.,
on brief for appellee.

Before CAMPBELL, Chief Judge, COF-
FIN and BREYER, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

Following our decision in this case, the
Supreme Court, —— U.S. ——, 106 S.Ct.
2241, 90 L.Ed.2d 688, vacated and remand-
ed to us for reconsideration (on speedy trial
grounds) under *Henderson v. United
States*, —— U.S. ——, 106 S.Ct. 1871, 90
L.Ed.2d 299 (1986).

We have thoroughly reviewed our discus-
sion of the speedy trial issue, appearing in
771 F.2d 589, 594–95. While we now modi-
fy our reasoning in one major respect, *in-
fra*, at 22–23, we believe that the result we
originally reached remains correct and is in
harmony with the Supreme Court's opinion
in *Henderson*. Accordingly, we affirm de-
fendants' convictions.

In our previous opinion we started with
the premise that the 30 days from October
17 (when the district court completed hear-
ings on the suppression motions) to Novem-
ber 16, 1983, were excludable as being the
30 days provided in subsection (J) of 18
U.S.C. § 3161(h)(1) (1985) for motions that
are "actually under advisement by the
court." No one questions our reasoning in
that respect. A problem arises, however,
because after excluding the 30–day period
attributable to the suppression motions,
there is still a total of 75 non-excludable
days, or five days over the limit set by the
Speedy Trial Act. The question thus arises
whether there is any basis for excluding at
least five more days.

In answering "yes" in our original opin-
ion, we reasoned that the additional five
days (and more) were excludable under
subsection (F), of 18 U.S.C. § 3161(h)(1), as
falling within the period necessary to de-
cide certain *other* motions, these being mo-
tions for severance, for orders in limine,

election of counts, and to control the sequence of the government's presentation of evidence at trial. These *non*-suppression motions had been under advisement since the preceding May, but were not actually decided, according to the judge, until after he first made up his mind about the suppression motions. The order deciding these other motions was issued December 21, 1983.[1] The judge explained his reason for not deciding these until after decision of the suppression motions as follows:

> These motions [*i.e.*, the other, *non*-suppression motions] primarily concerned the ordering of the trial. The summary judgment [sic, suppression] motion, however, was dispositive. If [they] had been allowed, the government would not have been able to go forward with trial. I conclude that it was reasonable to hold these motions until I had decided the motion to suppress.

We reasoned that at least five days of the period from November 16, 1983, up to decision of the suppression motions in late December—during all of which period the other motions remained constantly under advisement—was excludable under subsection (F), as

> delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, *or other prompt disposition of, such motion.*[2]

In other words, because the non-suppression motions were not ripe for determination until the court had determined the suppression motions, and because the latter were not resolved until after mid-December, we thought it proper to exclude the November 16 to December 21 period as time resulting from necessary delay in ef-

fecting a disposition of the *non*-suppression motions.

We recognize that *Henderson* indicates that for pretrial motions without a hearing (as the non-suppression motions were), only the time until "the court receives all the papers it could reasonably expect" is normally excludable under subsection (F). 106 S.Ct. at 1876. At that point the motions would be considered "under advisement," and there must be "prompt disposition" of those motions, that is, 30 days under subsection *(J)*. *Id.* Literally, this might mean that the non-suppression motions were "under advisement" as of May 27, 1983, when all the necessary papers were filed with the court. And none of the period from November 17 to December 21 could be excluded.

But in providing that unheard motions are "under advisement" when all necessary papers are filed, we believe the Court had in mind the usual motion, which, of course, is ready to be decided once all the papers are in. The present motions were unique, in that while they were in and of themselves not difficult, and while the necessary papers had been received as early as May 27, they were still not ripe for decision until the court made up its mind on the suppression motions. And these latter were distinctly not easy or obvious, as the length of both the district court's and our own opinions on the suppression issues attest. As the government argues, in this kind of situation, *Henderson* reasonably permits us to read subsection (F) to include time for other preliminaries, beyond simply filing papers, where such are essential before motions are ripe for decision, *i.e.*, can meaningfully be taken under advisement.

---

1. The opinion on the suppression motions was issued on December 23, 1983, two days later. However, Judge Skinner stated that he had not actually considered the non-suppression motions until *after* he had decided the motions to suppress. This is understandable notwithstanding the two-day hiatus in dates, since the court wrote a comprehensive opinion disposing of the suppression motions; these latter constituted the main basis of defendants' case (two of the four defendants pleaded guilty conditionally, reserving their right to appeal from the rulings on

the suppression motions). It is reasonable to suppose that the court had made a final determination of where it stood on the suppression motions sometime before the actual release of its comprehensive opinion on December 23, using the interim to edit and polish its opinion.

2. Unlike the suppression motions, the other motions were never the subject of a hearing, hence the emphasized language applied to them.

We are helped to this result by analogous reasoning in *Henderson* itself. In discussing whether subsection (F) could also exclude *time after a hearing* on a motion, despite the fact that subsection (F), literally read, only says time "through the conclusion of the hearing," the *Henderson* Court said that it was "convinced" that time while "a district court awaits additional [post-hearing] filings from the parties that are needed for proper disposition of the motion" can also be excluded under subsection (F). The Court reasoned that "[t]he provisions of the Act are designed to exclude all time that is consumed in placing the trial court *in a position to dispose of a motion.*" 106 S.Ct. at 1877 (emphasis added).

Applying this reasoning to this case, we can understand the district court's awaiting resolution of the suppression motions before believing itself in a position to dispose of the non-suppression motions. Since the court had not resolved the suppression motions until after mid-December, it is arguable that the entire period through then is excludable under subsection (F) as time needed by the trial court before it was "in a position to dispose of" the suppression motions. *Id.* Certainly the Supreme Court's holding—that *any* (and not just reasonable) delay before a motion can be taken under advisement is excludable under subsection (F)—also suggests that this interpretation is permissible.

There is, however, one problem with this analysis to which we may not have paid sufficient attention in our original opinion. Both the Speedy Trial Act and *Henderson* make clear that once a hearing is held, and all needed papers are in, a heard motion (like the suppression motions) may be held under advisement for purposes of computing excludable time only for 30 days. That period expired for the suppression motions on November 16, 1983. This 30-day requirement is expressly set out in subsection (J). While it is understandable and, in a general sense, was perhaps not unreasonable, that these complex suppression motions consumed more than 30 days of the time of a busy trial judge, who also has many other matters to attend to, it is absolutely clear that subsection (J) grants only 30 days of excludable time. (That is, no more than 30 days is excludable unless some other provision, such as clause (A) of section 3161(h)(8), which was not invoked here, applies.)

The question thus arises whether, where the judge has exceeded the 30 days allowed under subsection (J) to decide the suppression motions, we can properly exclude any part of the period thereafter ensuing until he actually decided those motions, as time under subsection (F) properly attributable to the disposition of the *non*-suppression motions. It is arguable that where the Act specifically allows only 30 excludable days to decide the suppression motions, we should not countenance the longer decisional period actually employed, even if otherwise "reasonable," as a yardstick for timing the remaining motions. This argument gains additional force from the language in subsection (F) which requires that, in cases of motions that do not require a hearing, the excludable time runs only from filing through the "prompt disposition of" the motion. Can it be said that motions dependent upon other motions have been *promptly* decided if the preceding motions were not themselves, by Congress's 30-day standard, promptly decided?

But we need not pursue this point further, since, upon further reflection, we find that there are an extra five excludable days here even upon a far more restricted reading of subsection (F)—a reading which does not open it to the abuse that some might fear were we to recognize an unlimited period of time (or even a "reasonable" time beyond 30 days) for deciding the underlying motions. Even if we strictly credit the court with only 30 days to decide the underlying suppression motions, *i.e.*, until November 16, 1983, the court is still entitled to further credit for up to 30 days additional time within which to decide the non-suppression motions, since these latter motions were not ripe for decision—*i.e.*, were not actually "under advisement"—until the underlying suppression motions were re-

solved. Subsection (J) and *Henderson* make this clear. In discussing motions that require no hearing, and hence require a "prompt disposition," *Henderson* says that the " 'point at which time will cease to be excluded' is identified by subsection (J), which permits an exclusion of 30 days from the time a motion is actually 'under advisement' by the court." 106 S.Ct. at 1876. Here, assuming as we do that the district court was not in a position to rule on the non-suppression motions until after it had determined the suppression motions, but also that it *had to* rule on the latter by November 16, this still leaves the court with 30 additional excludable days beyond November 16 to determine the non-suppression motions. This results in further excludable time from November 16 until December 15, 1983. Since, in fact, only five additional days were needed to comply with the Speedy Trial Act, the trial was in any event timely.[3]

*Affirmed.*

COFFIN, Circuit Judge, dissenting.

I have considerable sympathy for the majority's approach, recognizing the initial logic of its conclusion. Since subsection (J) allows the district court 30 additional days beyond November 16 to determine the non-suppression motions, and only five additional days were needed in this case to comply with the Speedy Trial Act, it seems at first blush reasonable to conclude that the trial was timely.

The problem with this conclusion, however, arises from the language of subsection (J). The statute very specifically provides an exclusion for the period during which "any proceeding concerning the defendant is *actually under advisement by*

the court" (emphasis added). This "under advisement" period is *limited* to 30 days. The majority assumes that because 30 days are available, it is proper to allocate five of them to deciding the non-suppression motions, regardless of the time actually devoted to those motions. But I do not see how we can say *any* time, up to 30 days, is excludible when subsection (J) allows an exception only for days *actually* used to decide the remaining motions. Although there is an argument for allowing some "play in the joints," it must be remembered that the Speedy Trial Act starts with the presumption that if a trial is not held within 70 days of indictment, the Act is violated. That time may be lengthened only if one of the enumerated exceptions applies. The subsection that applies here, (J), does not make a 100-day trial delay lawful; it merely allows an extension during the time motions actually were under advisement.

Moreover, my brethren's approach suffers from the same problem they sought to avoid by adopting it, namely the improper extension of the 30-day period allowed under (J) for the suppression motions. The majority approach would allow a district court up to 60 days for the suppression motions, so long as there is one non-suppression motion decided at the same time. (The sixty days would be reduced only by whatever time it took to decide the non-suppression motion, which, in some cases, probably would be less than one day.) Thus, there would be no sanction for violating the 30-day period under (J) for the suppression motions. In addition, there would be an invitation to manipulate; the government could help insure against speedy trial violations by filing other evidentiary motions after a motion to sup-

---

**3.** We disagree with our dissenting colleague's view that the non-suppression motions were not "actually under advisement" for five days. Congress, as our colleague now concedes, allocated up to 30 days more to the non-suppression motions assuming they were "actually under advisement." While we cannot be sure precisely how the judge divided his time, we think the fair meaning of the "actually under advisement" language was sufficiently met in re-

spect to the second motions where, in actual fact, the suppression and non-suppression motions remained pending together from November 16 to at least December 21, and where both sets of motions were decisionally intertwined in the present unique manner. In such circumstances, we do not believe Congress would have anticipated more of a showing than was made that the second set of motions were actually under advisement for purposes of the Speedy Trial statute.

press is filed. And defendants will likely be chilled; they will think twice before filing any additional motions.

The "common sense" result reached by the panel might have more to commend it if there were not available perfectly adequate means, consistent with the statute, for a district court to obtain as much time as it reasonably needs to decide pretrial motions. It may take all the time it wants before having a hearing on a motion to suppress; it can wait after the hearing until all the filings are in; it can then take 30 days and, on the 30th day, it can announce that exceptional circumstances justify a further delay, 18 U.S.C. 3161(h)(8). If, at the end of all this time, there is pending a non-suppression motion, the court has 30 days to decide it—but it can announce a needed extension on or before the 30th day.

I therefore conclude that only time actually spent on the non-suppression motions in this case is excludable. This is not to say that I believe a court must make a showing that it was actually considering the motions on every one of the days it had them under advisement. *See* original panel opinion at 6–10. I merely believe that only the days actually under advisement are excludable.

On the record before us in this case, it is impossible to determine how much time was devoted to the non-suppression motions. The district court stated that it waited until it had decided the suppression motions before taking the non-suppression motions under advisement. The decision on the suppression motions was issued on December 23, however, two days *after* the order on the non-suppression motions. As does the majority, I assume that the court first decided the suppression motions, and then turned to the non-suppression motions while it put finishing touches on the lengthy opinion disposing of the suppression motions. But we do not know when the court completed deliberations on the suppression motions, or whether the court then took one hour or one day or five days to decide the non-suppression motions. I

would therefore remand the case to that court asking it to specify how much time it spent on the non-suppression motions. If the non-suppression motions were under advisement for less than five days, the Act was violated.