UNITED STATES of America

v.

Kenneth HASTINGS.

Crim. A. No. 86–0419–F.

United States District Court,
D. Massachusetts.

March 10, 1987.

Memorandum and Order on Reconsideration July 22, 1987.

Henry Rigali, Asst. U.S. Atty., U.S. Atty's Office, Springfield, Mass., for plaintiff.

Myles Jacobson, Linda Thompson, Thompson, Thompson, Nagel, & Jacobson, Springfield, Mass., for defendant.

## MEMORANDUM

FREEDMAN, Chief Judge.

Before the Court is defendant's motion to dismiss the indictment because of an alleged violation of the Speedy Trial Act of 1974, as amended, 18 U.S.C. §§ 3161 *et seq.* ("the Act"). On March 6, 1987 the Court entered an Order allowing the motion and dismissing the indictment without prejudice.

### I.

The Act's basic rule, applicable to the circumstances of this case, is as follows:

In any case in which a plea of not guilty is entered, the trial of a defendant charged in an Information or Indictment with the commission of an offense shall commence within seventy (70) days from the filing date (and making public) of the

Information or Indictment or from the date the defendant has appeared before a judicial officer of the Court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1).

The defendant was arrested on November 20, 1986 and a complaint issued the same day charging him with various federal drug offenses. Also on November 20, the government moved for pretrial detention. Defendant was temporarily detained pending a detention hearing held by the Magistrate on November 25. Following the hearing, the Magistrate ordered defendant detained but permitted the defendant to attend an "inpatient" detoxification treatment program at Spectrum House. On December 17, 1986 the Grand Jury returned the instant indictment. The same day, the defendant was arraigned and, after a further hearing, again ordered detained pending trial. Assuming no exclusions of time, defendant was required to be tried by February 25, 1987.

As the First Circuit has instructed, in ruling on a motion to dismiss under the Act, "the district court must review the course of events from the indictment up to the filing of the motion to dismiss, tracking each motion and proceeding which occurred during that period and evaluating the resultant delay under the Act." *United States v. Pringle*, 751 F.2d 419, 429 (1st Cir.1984). In light of this command, the Court will attempt to sort through what occurred between December 17, 1986 and March 6, 1987, the date of the Order dismissing the indictment.

## II.

At defendant's arraignment the Magistrate established a routine pretrial schedule calling for automatic discovery to be provided by December 24, 1986; defense motions due by January 14, 1987; responses from the government due by January 21, 1987; a motions hearing before the Magistrate on January 26, 1987; and trial on February 23, 1987. The government sent automatic discovery material to defendant's former attorney on December 19,

1986. On January 8, 1987 defendant's current attorney, Miles Jacobson, filed his appearance.

On January 12, 1987 the government received a telephone call from Attorney Terry Nagle, Mr. Jacobson's associate, requesting a ten-day extension of the January 14, 1987 deadline for filing defense motion. Assistant United States Attorney Henry Rigali assented with the proviso that an appropriate disappearance be filed by former counsel and that the government have a parallel extension for the government's response. In an affidavit, Mr. Rigali states:

I was not aware that Attorney Nagle then had a similar conversation with the Deputy Clerk of Court. Based upon my information and belief, the Deputy Clerk of Court, who obviously had a similar conversation with Attorney Nagle (see Nagle Affidavit), immediately rescheduled the January 26, 1987 hearing (copy attached). On January 13, 1987, the government received written notice that the hearing date for contested motions, then scheduled for January 26, 1987, had been continued for twelve (12) days and rescheduled to occur on February 6, 1987. In Attorney Nagle's Affidavit, he states that on the day following our telephone conversation (January 13, 1987), he called the United States Attorney's Office and left a message to the effect that Mr. Jacobson did not intend to file pretrial motions. I do not dispute this fact, however, I was not personally informed of it. However, based on information and belief, the scheduling order change had already gone into effect prior to Attorney Nagle's second call to the Clerk of Courts stating that it was the defendant's intention *not* to file pretrial motions and therefore, that he was withdrawing his request for a ten-day extension. On information and belief, the twelve-day extension of time would not have occurred but for the request of counsel.

Rigali Affidavit at 2–3.

After having spoken to the Magistrate's Deputy Clerk, the Court has determined

that Mr. Nagle never informed the Court of any request for an extension of time. The rescheduling of the contested motion hearing was not, as reasonably assumed by Mr. Rigali, caused by defendant's request for an extension of time, but was actually initiated by the Magistrate who cancelled all hearings for January 26, 1987.[1]

On January 15, 1987 Mr. Rigali and Mr. Jacobson conferred by telephone about, among other things, the possibility of the defendant changing his plea. According to Mr. Rigali, Mr. Jacobson agreed that the evidence against the defendant appeared to be "insurmountable," and that a plea was likely. Rigali Affidavit at 3. Mr. Jacobson disputes this. He denies he agreed that the evidence appeared insurmountable or that a plea was likely. According to Mr. Jacobson, he indicated that the government did have a strong prima facie case and thought it appropriate to begin plea negotiations. Jacobson Second Affidavit at 1.[2]

In Mr. Jacobson's First Affidavit he states that he learned, in a conversation with the Deputy Clerk, that the trial date of February 23, 1987 would have to be changed because of the Court's absence that week. Jacobson's First Affidavit at 1. Mr. Rigali states in his affidavit that he "had no knowledge of this information. Specifically, I was never informed by the Court or anyone else that trial was not to occur February 23, 1987, until late in the day, Friday, February 20, 1987, after I had prepared the government's motion to continue the trial." Rigali Affidavit at 4.

Contrary to Mr. Rigali's stated ignorance, on February 2, 1987 (exactly three weeks prior to the scheduled trial date!), during the course of an unrelated criminal trial, *United States v. Michael Abeid,* Cr. Nos. 86–281 & 86–352, the Court personally informed Mr. Rigali of its scheduled ab-

sence during the week of February 23, 1987.[3]

On February 18, 1987 Mr. Rigali met with Mr. Jacobson and had further discussions related to a plea agreement. The meeting did not resolve the discussions; it was left that Mr. Rigali would be in touch with Mr. Jacobson in the next few days.

On February 20, 1987, Mr. Rigali wrote to Mr. Jacobson and set forth the government's final position regarding a plea. Mr. Rigali attempted to telephone Mr. Jacobson to communicate the content of his letter, but Mr. Jacobson was not in his office that day.

Also on February 20, 1987 Mr. Rigali prepared and filed a motion for a two-week continuance. As grounds for the continuance the motion stated that "Counsel for the Government and Defendant are presently discussing means to resolve of [sic] this matter by means other than trial." According to Mr. Rigali, just prior to the filing of the motion did he learn that the Court would be unavailable the week of February 23.

On February 23, 1987 Mr. Rigali and Mr. Jacobson again conferred by telephone. Mr. Rigali informed Mr. Jacobson of his motion for a continuance. There were also further discussions about a plea agreement. Mr. Rigali states that based on Mr. Jacobson's "representations," it was his opinion that the defendant intended to plead guilty to the indictment and that he had no objection to the continuance. According to Mr. Rigali, "Attorney Jacobson, at no time, expressed any disagreement, opposition or reservation about the government's Motion to Continue. In my opinion, he appreciated the government filing the motion on his behalf because his client would be the primary beneficiary of an

1. On March 6, 1987, Assistant United States Attorney Rigali submitted a supplemented affidavit in which he states that he has consulted with the Magistrate's Deputy Clerk who informed him of these facts.

2. On March 4, 1987 Jacobson filed two affidavits; one at the hearing on the motion to dismiss and the other previously. For clarity sake, the two-page affidavit filed previously will be

referred to as Jacobson's First Affidavit. The affidavit filed in court and ordered impounded will be referred to as his Second Affidavit.

3. The Court directed the court reporter to transcribe relevant portions of a bench conference during the Abeid trial. It is reproduced as the Appendix to this Memorandum.

extension of the trial date." Rigali Affidavit at 7.

On February 26, 1987 defendant filed his opposition to the motion for a continuance. Defendant stated that he did not join in or agree to the government's motion. Mr. Jacobson also denies that he implicitly consented to the motion during his conversation with Mr. Rigali.

On February 26, 1987, the Deputy Clerk advised Mr. Jacobson and Mr. Rigali that the trial had been rescheduled for March 4, 1987.

After he received defendant's opposition and had his conversation with the Deputy Clerk, Mr. Rigali, on February 26, 1987, filed a response and a motion to exclude time based on the interests of justice. *See* 18 U.S.C. § 3161(h)(8)(A). The same date, Mr. Rigali had a further conversation with one of Mr. Jacobson's associates who professed continued interest in plea negotiation. As late as 1:10 p.m. on this date, Mr. Rigali and Mr. Jacobson were still having discussions about the possibility of a plea agreement.

On March 3, 1987 defendant filed an opposition to the government's motion to exclude time and a motion to strike statements made by defense counsel made during plea negotiations pursuant to Fed.R. Crim.P. 11(e)(6)(D).[4] On February 25, 1987 defendant filed the instant motion to dismiss for Speedy Trial Act violations.

### III..

Having thus recounted what proceeded between the indictment and the filing of the instant motion, the Court must now determine what period of time, if any, must be excluded from the seventy-day limit.

█ The government initially sought to exclude two periods of time: twelve days from January 16, 1987 through February 6, 1987 because of the rescheduling of the contested motions before the Magistrate, and from February 20, 1987 through March 4, 1987 during which the government's mo-

tion for a continuance was pending. As to the first period, it now appears clear that, in fact, no continuance was ever requested by defendant, nor was one ever granted. *See, supra* at n. 1. The Court, therefore, need only concern itself with the second period.

Among the periods of delay the Act excludes is delay resulting from the pendency of a pretrial motion. The relevant subsection provides as follows:

(h) The following periods of delay shall be excluded in computing the time ... within which the trial of any such offense must commence:

(1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—

....

(F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion....

18 U.S.C. § 3161.

Subsection (F) has been interpreted to contain rules for excluding time for pretrial motion in two distinct situations. The first, not at issue here, is when a hearing is held on the motion. The second is when a motion is adjudicated without a hearing on the basis of the papers before the Court. In the second situation, the time from when the Court receives all necessary papers through the "prompt disposition" of the motion is excludable. *Henderson v. United States,* 476 U.S. 321, ——, 106 S.Ct. 1871, 1876, 90 L.Ed.2d 299, 308 (1986); *United States v. Carter,* 803 F.2d 20, 21 (1st Cir.1986).

As stated above, the government contends that the entire period from February 20 through March 4, 1987 should be excluded because of its motion for a continuance pursuant to subsection (F). Defendant disagrees. Defendant maintains that "[m]otions for a Continuance are governed by 18 U.S.C. § 3161(h)(8) and do not result

---

**4.** Inasmuch as the Court has impounded the offending document, no action on this motion need be taken.

in automatic tolling upon filing as to other motions under § 3161(h)(1)(F)." Defendant's Second Further Memorandum at 1.

Defendant's argument has some appeal in logic. If the government's view is accepted, evasion of the Act's seventy-day limit could be easily accomplished—the government need only wait until the sixty-ninth day to file a motion for a continuance. By the time the defendant's opposition is received and the Court rules, the government will have been successful in unilaterally expanding the seventy-day period.

Despite these legitimate concerns, the Court is not prepared to rule at this time that a motion for a continuance is excluded from subsection (F) for a variety of reasons. First, motions for a continuance are literally included within subsection (F)'s expansive language ("delay resulting from *any* pretrial motion"). Second, the type of evasive conduct at the heart of defendant's concerns is subject to the Act's sanction provision—18 U.S.C. § 3162(b). Third, at least one case has found that a motion for a continuance is included within subsection (F). *United States v. Darby*, 744 F.2d 1508, 1518 (11th Cir.1984). Finally, the resolution of this point does not affect the outcome of defendant's motion because, as the Court will next discuss, assuming the government's motion for a continuance does toll the period, the length of the time to be excluded would be insufficient.

Assuming, therefore, that the government's motion does automatically toll the period, what period of delay, if any, should be excluded? Because subsection (F) provides that in cases in which a hearing is not necessary, the time from the filing of the motion through its "prompt disposition" should be excluded, the inquiry must be when was there a disposition of the government's motion.

Defendant argues that, in effect, the motion was disposed of *before* it was filed. Defendant states: "The motion requested a continuance of the trial date set for February 23, 1986 [sic]. In fact, before the day the motion was filed, the trial date of February 23 had already been cancelled.

Therefore, even were the filing of a motion for continuance to have the effect of tolling, in this case the number of days to be excluded would be zero." Defendant's Second Further Memorandum at 1–2.

The Court must agree. But even if the motion was not considered disposed of by February 20, it most certainly was when the date for trial—February 23—came and went. It is hard to understand what is left to resolve in a motion for a continuance after the original date has passed. Based on either of these explanations the Court concludes that the Act was violated when defendant's trial was not commenced in a timely fashion.

## IV.

Having concluded that the Act was violated, the Court must order that the indictment against the defendant be dismissed. The next question is whether the dismissal should be with or without prejudice. The Act provides:

> In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

18 U.S.C. § 3162(a)(2). The Court will now examine each of these factors.

Defendant is charged in an eight-count indictment as follows: Counts I through VII allege that defendant possessed with the intent to distribute or did distribute cocaine and methamphetamine on four separate occasions in violation of 21 U.S.C. § 841(a)(1). Count VIII alleges that on the last of these occasions, November 20, 1986, defendant knowingly and intentionally carried a firearm on his person during the commission of the drug trafficking offense in violation of 18 U.S.C. § 924(c).

Defendant was alleged to have been in possession of significant amounts of controlled substances on four occasions. As the Magistrate found during the detention

hearing, the weight of the evidence against defendant is overwhelming.

More significant is the allegation that defendant was armed with a concealed semiautomatic pistol loaded with live ammunition at the time of one of the drug transactions. Congress has provided a sentence enhancement of a minimum of five years for a violation of 18 U.S.C. § 924(c).

In mitigation, defendant states that he had a valid Massachusetts license for a firearm. However, as the government points out, the license provided authority only for target practice and hunting. Defendant also argues in mitigation the fact that all other participants in the alleged drug offenses were government agents. According to the defendant, "[t]he government's inability to reprosecute Mr. Hastings, in the event of dismissal with prejudice, will not leave in tact [sic] an ongoing drug distribution organization." Defendant's Memorandum at 4.

On balance, the Court considers the offenses with which defendant is charged to be extremely serious. The fact that an individual has an unexpired gun permit hardly detracts from the danger to law enforcement officers and the public when firearms are part of a drug transaction. Also, in the Court's view, the fact that defendant is not charged with being a part of an ongoing conspiracy is counter-balanced, to some extent, with his participation in four discrete drug transactions involving considerable quantities of cocaine and methamphetamines.

Viewing the events between indictment and the instant motion, the overriding feature is a lack of bad faith. While there certainly should have been greater diligence on the part of the prosecution and the Court, the very slight delay hardly prejudices defendant in any severe fashion. The government suggests that defendant has been attempting to "have his cake and eat it too," by leading the government along in plea negotiations only to then rely on the Speedy Trial Act. The Court sees no evidence that defendant or his counsel were insincere about the plea negotiations. There is no reason why a defendant cannot continue to negotiate up until the eve of trial without forfeiting a valid Speedy Trial Act defense.

The Court concludes that reprosecution will not have serious effects on the administration of this Act or on the administration of justice. The Act was violated only by a matter of a few days. Defendant has not cited to any case, and the Court has been unable to find any, in which a case has been dismissed with prejudice on comparable facts. The Court also recognizes that the dismissal of this indictment, even without prejudice, is likely to have a significant educative and deterrent effect. Both this Court and the prosecutor's office will no doubt be more diligent in watching the Speedy Trial calendar. Dismissing this case with prejudice would not demonstrably improve these effects sufficient to outweigh the public interest in the reprosecution of a rather serious offense.

On balance then, considering the very serious nature of the crime, the circumstances leading to dismissal and the effect of reprosecution on the administration of the Act and the administration of justice, the Court concludes that the indictment should be dismissed without prejudice.

### APPENDIX

United States District Court District of Massachusetts

United States of America

v.

Michael Abeid

CR# 86–281

CR# 86–352

*EXCERPT OF BENCH CONFERENCE* held on February 2, 1987, U.S. District Court, District of Massachusetts, Springfield, Massachusetts, before Freedman, Chief District Judge.

APPEARANCES

HENRY L. RIGALI, ASSISTANT U.S. ATTORNEY.

GEORGE NASSAR, ESQ., representing the Defendant.

Susan Zomermaand
Federal Court Reporter

1550 Main Street

Springfield, MA 01103

(Excerpt of side bar conference held on 2–2–87 with the Court, Mr. Rigali, and Mr. Nassar)

THE COURT: When can counsel be ready for trial?

MR. NASSAR: I would get ready quickly.

MR. RIGALI: About two weeks, your Honor.

THE COURT: Two weeks. How long will the trial take?

MR. RIGALI: Well, two trials. First one, you have been through. That took about three days.

MR. NASSAR: Wouldn't be that long.

THE COURT: Yambo?

MR. RIGALI: Yambo.

THE COURT: Same type of evidence?

MR. RIGALI: Exactly the same.

THE COURT: Are all the agents local?

MR. RIGALI: They are all local.

MR. NASSAR: Everybody is local.

MR. RIGALI: True.

THE COURT: If you can be ready for trial, we can have the first trial next week.

MR. RIGALI: Well, again, I don't know what the schedule is. I'm not going to say these people are available. I don't know where these officers are right now, but I would say no more than two weeks, and then you have the second trial.

THE COURT: It will be delayed two weeks, because I don't have time the following week. I go away for a week. My flight is paid for. I allow lawyers to go away; I'm sure going to go away, so I would suggest you take this next hour to talk together amongst yourselves, and your respective clients. You check with your agents; find out who is available, and whether they would be ready for trial either this week, or by Monday, at the latest; a week from today, And then report back

to me, and do what you want to do. I will have to hear it in open court.

MR. NASSAR: Come back at two?

THE COURT: Yes.

MR. RIGALI: Two o'clock?

THE COURT: Or make it 2:30. I'll give you an extra half-hour.

MR. NASSAR: All right.

MR. RIGALI: All right.

(End of excerpt of bench conference)

## MEMORANDUM AND ORDER ON RECONSIDERATION

Defendant is charged in a nine-count indictment with possession and distribution of cocaine and methamphetamine, 21 U.S.C. § 841(a)(1), and carrying a firearm during the commission of a drug offense, 18 U.S.C. § 924(c). This indictment was returned after the Court ordered that a previous eight-count indictment be dismissed without prejudice because of a violation of the Speedy Trial Act of 1974, *as amended*, 18 U.S.C. §§ 3161 *et seq* ("the Act").

Defendant now moves to dismiss the instant indictment or for reconsideration of the earlier dismissal without prejudice, to suppress evidence, and for sanctions and further discovery.

On June 2, 1987 the Court heard oral arguments on the motion to dismiss or for reconsideration and ordered the parties to file supplemental briefs on all outstanding pretrial motions. The parties have now done so. In light of the Court's disposition of the motion to dismiss or for reconsideration, the Court will not address the other motions.

## I. BACKGROUND

Defendant was arrested on November 20, 1986 and ordered detained pending a hearing. On November 25, defendant was arraigned and, after a detention hearing, again ordered detained pending trial. Absent periods of excludable delay, the Speedy Trial Act required defendant to be

tried by February 25, 1987. 18 U.S.C. § 3161(c)(1).[1]

On December 19, 1986 the government sent former defense counsel an automatic discovery letter stating, *inter alia:*

> Pursuant to the Uniform Order for Automatic Discovery issued by the Court in the above matter on December 17, 1986, the government provides you with the following:
>
> ....
>
> 7. The government is not in possession of any exculpatory evidence under *Brady v. Maryland,* 373 U.S. 83, [83 S.Ct. 1194, 10 L.Ed.2d 215] (1963); *United States v. Augurs* [Agurs], 427 U.S. 97 [96 S.Ct. 2392, 49 L.Ed.2d 342] (1976); *Smith v. Phillips,* 455 U.S. 209 [102 S.Ct. 940, 71 L.Ed.2d 78] (1982). The government is aware of its continuing duty.
>
> ....
>
> 9. If any promises, rewards or inducements have been given to any witness that the government intends to call as a witness during the trial of this case, you will be advised of same prior to the testimony of that witness.

Counsel for the parties engaged in plea negotiations during the months of January and February 1987. Throughout the pendency of the first indictment, defendant never filed any motions. Because of the unavailability of the Court and the progress of plea negotiations, trial was not begun within the speedy trial period. Defendant moved to dismiss the indictment alleging that the Speedy Trial Act had been violated.

On March 6, 1987 the Court allowed the motion, dismissing the action without prejudice. The Court gave its rationale in a Memorandum issued on March 10, 1987. After reviewing the events from the filing of the indictment through the filing of the motion to dismiss, the Court concluded that because no period of delay could be excluded, the Act had been violated and dismissal

was required. Memorandum at 7–10. *See* 18 U.S.C. § 3162(a)(2). After weighing the factors specified in the Act, 18 U.S.C. § 3162(a)(2), the Court concluded that dismissal should be without prejudice.

Defendant was ordered released from federal custody on March 6, 1987. On March 9, 1987, after being advised by his counsel that a new arrest warrant had issued against him, the defendant voluntarily surrendered himself to the Springfield office of the Drug Enforcement Administration. Defendant was reindicted on March 11, 1987. In addition to the first eight counts which were also contained in the dismissed indictment, the new indictment added a ninth count alleging an additional count of possession of controlled substances with the intent to distribute.

On March 12, 1987, during his arraignment on the instant indictment, the Magistrate inquired of the prosecution whether the government had in its possession any automatic discovery material that had not already been provided. The government's attorney responded that "automatic discovery has been provided." Tr. March 12, 1987 at 4. Defendant's counsel objected and raised the issue of whether the government's response to the issue of whether promises, rewards or inducements had been made (response # 9, *quoted supra* at 895) was adequate. The Magistrate stated that he did not consider this response to comply with Local Rule 42. *Id.* at 16. The Magistrate ordered the Assistant United States Attorney "to put together a new automatic discovery response, complying with your interpretation [of] the Government's obligations under the automatic discovery rules. I would say that you should look at Local Rule 42 as far as # 9 goes, the issue of promises, rewards and inducements."

On March 16, 1987 the Assistant United States Attorney sent a second automatic discovery letter to defendant's counsel.

---

1. Section 3161(c)(1) of Title 18 provides: "In any case in which a plea of not guilty is entered, the trial of a defendant charged in an Information or Indictment with the commission of an offense shall commence within seventy (70) days of the filing date (and making public) of the Information or Indictment or from the date the defendant has appeared before a judicial officer of the Court in which such charge is pending, whichever date last occurs."

This letter contained the following response:

(4) *Records [sic] and Inducements*

The individual who assisted the government during its investigation of the defendant received $1,150.00. The Drug Enforcement Administration has also informed said individual that it may receive additional funds in the future. No other promises, records [sic] or inducements are known to have been provided.

The exhibits to this letter demonstrate that this informant was present or involved in the transaction which formed the basis of each count of the indictment. According to the defendant, "the informant's testimony would be necessary for the government even to make a prima facia [sic] case as to counts I–V." Defendant's Memorandum on Motion to Dismiss and Other Motions Pending Before the District Court at 7. The government does not dispute the importance of this individual to its case.

On March 18, 1987 the defendant requested further automatic discovery. On March 19, 1987 the government declined to supplement its discovery response without order of the court. Defendant thereupon filed his motion to dismiss or for reconsideration of the dismissal without prejudice and motion for further discovery and/or sanctions.

In its memorandum in opposition to defendant's motions, the government provided further information about the nature of its arrangement with the confidential informant:

In return for his cooperation, the government agreed to reimburse the informant all expenses, including lost wages and the cost of use of the informant's automobile. (The informant has been employed throughout the investigation). To date, the informant has received $1150.00 in expense money.

The Drug Enforcement Administration has informed the informant that he may receive a financial reward for his services upon the completion of the case. The informant was not promised that he would receive a reward depending upon the agency's budgetary status at the time, but merely that a reward was possible. The informant has been told by the Drug Enforcement Administration and the U.S. Attorney that payments to the informant for either expense money or as a reward, specifically and emphatically are *not* contingent on the arrest or conviction of any person, including the defendant.

Having thus recounted what transpired during the pendency of the two indictments, the Court can turn to defendant's motion.

## II. DISCUSSION

 The essence of defendant's motion is that, in light of recently discovered evidence, *viz*, the fact that the government failed to provide automatic discovery material, the Court should reconsider its decision to dismiss the earlier indictment without prejudice. More to the point, defendant argues that, had the Court known at the time it dismissed the earlier indictment that the government had violated Local Rule 42 by failing to provide defendant with the discovery material to which he was automatically entitled, the dismissal would have been with prejudice. In the alternative, the defendant asks that the instant indictment be dismissed for failure to comply with Fed.R.Crim.P. 16 or pursuant to the supervisory powers of the Court.

In order to determine whether reconsideration is appropriate it is necessary for the Court to look back in time to see what motivated it to dismiss the first indictment without prejudice. The Court considered the factors specified in the Speedy Trial Act—"the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2).

The Court noted that defendant was accused of possession with the intent to distribute "significant" amounts of cocaine and methamphetamine on four separate occasions. On the last of these occasions, defendant was alleged to have knowingly

and intentionally carried a firearm on his person during the commission of the drug offense, thus subjecting defendant to a sentence enhancement of a minimum of five years. 18 U.S.C. § 924(c). The Court stated: "On balance, the Court considers the offenses with which defendant is charged to be extremely serious." Memorandum at 893.

The Court characterized the events between the indictment and the motion to dismiss by stating that "the overriding feature is a lack of bad faith." *Id.* The Court also noted that "[w]hile there certainly should have been greater diligence on the part of the prosecution and the Court, the very slight delay hardly prejudices defendant in any severe fashion." *Id.* at 893.

Finally, the Court considered the effect that reprosecution would have on the administration of the Speedy Trial Act and on the administration of justice:

> The Court also recognizes that the dismissal of this indictment, even without prejudice, is likely to have a significant educative and deterrent effect. Both this Court and the prosecutor's office will no doubt be more diligent in watching the Speedy Trial calendar. Dismissing this case with prejudice would not demonstrably improve these effects sufficient[ly] to outweigh the public interest in the reprosecution of a rather serious offense.

*Id.* at 893. After balancing these considerations, the Court concluded that dismissal of the indictment should be without prejudice.

The Court's view of some of these factors remains the same. Certainly, the circumstances of defendant's alleged conduct, particularly his possession of a loaded weapon during the commission of the offense, are still viewed by the Court as being extremely serious. The Court also continues to reject the government's accusation that defense counsel was trying to "lead the government along," conducting plea negotiations while silently awaiting the expiration of the speedy trial period. What *has changed* in the wake of the

government's violation of Local Rule 42 is the Court's view of the bona fides of the prosecutor and the impact of reprosecution on the administration of the Speedy Trial Act and the administration of justice.

The rules of this Court were substantially revised in 1986. These new rules became effective July 1, 1986 and were to apply to all proceedings pending or commenced after this date. Local Rule 2(b). Local Rule 42 regulates discovery in criminal cases. This rule provides:

> In all criminal cases, the following material and information in the possession, custody or control of the parties, the existence of which is known, or by the exercise of due diligence may become known, to the attorneys for the parties, shall be disclosed to the opposing party.

> Such disclosure will be routine and automatic, i.e., without any court order in the particular case. It should occur as soon as counsels' trial engagements permit and in all events within fourteen (14) days after arraignment.

> (a) The Government shall disclose, and allow the defendant to inspect, copy and photograph, all written material as follows:

> . . . .

> (7) If any promises, rewards, or inducements have been given to any witnesses, a written statement of any such promises, rewards or inducements.

> . . . .

> (c) Any duty of disclosure and discovery set forth herein is a continuing one.

> (d) If in the judgment of either party it would be detrimental to the interests of justice to make any of the disclosures set forth above, such disclosures may be declined and the opposing party advised in writing, with a copy to the clerk, of the specific matters on which disclosure is declined and the reasons for declining, within seven (7) days of the date of the arraignment. If the opposing party seeks to challenge the declination, said party shall file forthwith a Motion for Further

Discovery accompanied by a supporting memorandum, and, if appropriate, affidavit(s).

The government readily admits that it violated this rule but contends that its violation was not done in bad faith, was more technical than substantive, and that defendant was not prejudiced by it in any case.

Originally, the government explained that its violation of Rule 42

was the result of the Government's failure to update the standard "automatic discovery letter" form historically issued by the United States Attorney prior to the July, 1986 rules change. This fact does not justify or excuse the error, to which the Government readily confesses, but certainly demonstrates the lack of intentional misconduct or bad faith on its part.

Government's Response to Hastings' Motion to Dismiss and Request for Reconsideration at 2.

This attempted justification is highly problematical. Prior to the new local rules, automatic discovery in this district was regulated by this Court's standing Uniform Order for Automatic Discovery in Criminal Cases ("Uniform Order"), which was in effect from January 1, 1974 until it was supplanted by the new Local Rules on July 1, 1986. The Uniform Order contained the following provisions:

In all criminal cases brought in this district ... the following material and information in the possession, custody or control of the parties, the existence of which is known, or by the exercise of due diligence may become known, to the attorneys for the parties, shall be disclosed to the opposing party.

Such disclosure will be routine and automatic, i.e., without any court order in the particular case. It shall occur as soon as counsels' trial engagements permit and in all events within 14 days after arraignment....

A. The Government shall disclose, and allow the defendant to inspect, copy and photograph, all written materials as follows:

. . . .

7. If any promises, rewards or inducements have been given to any witnesses, a written statement of any such promises, rewards or inducements.

. . . .

C. Any duty of disclosure and discovery set forth herein is a continuing one.

D. If in the judgment of the United States Attorney it would be detrimental to the interests of justice to make any of the disclosures set forth above, such disclosures may be declined and defense counsel advised in writing, with a copy to the Clerk, of the specific matters on which disclosure is declined and the reasons for declining, within seven (7) days of the date of the arraignment. If the defendant seeks to challenge the declination he shall file forthwith a Motion for Further Discovery accompanied by a supporting memorandum and, if appropriate, affidavit(s).

Comparing the texts of the Uniform Order with Local Rule 42, it is readily apparent that the two rules are virtually *word for word identical.* If for no other reason then, this explanation calls into question the good faith of the prosecutor. It also demonstrates that the government's failure to comply with the Uniform Order is not of recent vintage.[2]

Perhaps realizing that its earlier proffered explanation was less than persuasive, the government, in its post-argument memorandum, shifts the focus by asserting that its violation of Local Rule 42 was really one of form rather than substance. Rather than having responded as it did in the original automatic discovery letter by stating that if promises, rewards or induce-

---

**2.** During defendant's arraignment, the Magistrate commented that a former Assistant United States Attorney in charge of the Springfield office, "always lived in horror that any defense counsel would ever figure out that [the government is] supposed to supply promises, rewards and inducements and when he went into private practice he immediately brought it to the Court's attention that they had an obligation to do that." Tr. March 12, 1987 at 20.

ments had been given defendant would be so informed prior to the testimony of such a witness, the government now suggests that it should have made use of the provisions available under Local Rule 42(d) and responded:

> In the judgment of the United States Attorney, it would be detrimental to the interests of justice to disclose promises, rewards or inducements at this time. Disclosure of said information would tend to identify government witnesses thereby subjecting them to harassment, humiliation and danger. The government will disclose said information when it is certain that the safety of its witnesses can be insured and, in any event, prior to the start of trial.

Government's Memorandum Regarding Defendant's Motions for Dismissal, Reconsideration and Sanctions at 12.

Ordinarily, the Court would be hesitant to doubt the government's expressions of concern about the safety of an informant. In this case, however, these *post hoc* concerns appear disingenuous. After all, the automatic discovery rule did not require the government to disclose the informant's identity, merely the fact that inducements had been made. In addition, the fact that the government readily supplied the inducement information in the second indictment casts into doubt the genuineness of the government's fears about the safety of its witness.

The automatic discovery responses provided by the government in this indictment has also not been beyond reproach. As stated above, *supra* at 895–96, at defendant's arraignment the government's initial position was that all automatic discovery had already been provided. It is an open question whether or not the government would have disclosed its arrangement with the confidential informant without the early prodding of the Magistrate. In addition, at oral argument, the government characterized the payment of $1,150 to the informant as reimbursement for expenses. Subsequently, in its post-argument memorandum, the government acknowledged that the informant "may receive a financial

reward for his services upon the completion of the case." *See supra* at 896.

Just as significant as the Court's reassessment of the good faith of the government is the detrimental effect the Court now finds that the reprosecution of Mr. Hastings will have on the administration of the Speedy Trial Act and the administration of justice in light of the government's violation of Local Rule 42.

This effect is clearly borne out by the government's further attempt to minimize the Rule 42 violation. According to the government: "The government's disclosure emphatically did *not* suggest, as the defendant implies, that no promises, rewards or inducements were afforded to its witnesses. To the contrary it clearly stated, *inter alia,* that if 'promises were made, the government declines to disclose them at this time.' " Government's Memorandum Regarding Defendant's Motions for Dismissal, Reconsideration and Sanctions at 12 (emphasis in original). In the government's view then, having implied that promises, rewards or inducements had been paid to the key prosecution witness, the defendant should have taken the initiative and sought further discovery. As the Assistant United States Attorney put it at oral argument, "[c]ontrary to the representation of counsel, we don't say this material does not exist. We didn't mislead them. We simply say we are not going to give it to you. If you want it, you will have to get a court order to get it." Tr. June 2, 1987 at 6.

It is obvious that this approach is inconsistent with the very idea of *automatic* discovery—both Local Rule 42 and the Uniform Order require that information be required without a specific request from the defendant and without order of the court. The government's lapse is particularly unfortunate because of the importance of the information. Information about governmental payments to an informant, either as expense money or as a reward, "is potent ammunition in a defense attorney's arsenal for impeaching a government witness." *United States v. Richman,* 600 F.2d 286, 291 (1st Cir.1979).

If all that occurred in these cases were violations of automatic discovery rules then dismissal would obviously be an unwarranted sanction. Standing alone, the discovery violation has not seriously prejudiced the defendant because he has not actually been tried without the knowledge of the government's payment to the informant.[3] But there are more than discovery errors involved in this case. First, there is strong support in the record for the conclusion that the local office of the United States Attorney has had a long-standing policy of disobeying the Uniform Order. *See supra at* 898 & n. 2. Much more significant, however, is the unique interrelationship between the government's failure to provide automatic discovery and the violation of the Speedy Trial Act.[4]

The basic rule of the Speedy Trial Act is that absent periods of excludable delay, a criminal defendant has a right to have his trial commence within seventy days of the filing and making public of the indictment. 18 U.S.C. § 3161(c)(1). In cases in which a defendant is detained solely because he is awaiting trial, his trial must be commenced, absent periods of excludable delay, no later than ninety days following the beginning of the continuous detention period. 18 U.S.C. § 3164. Perhaps the most common reason for excluding time from these periods is the filing of pretrial motions. 18 U.S.C. § 3161(h)(1)(F). Counsel in nearly every criminal case can be expected to file one or more pretrial motions. While any one motion is pending, the speedy trial period is tolled. For a defendant who is in pretrial detention, such as Mr. Hastings, the filing of a pretrial motion carries with it the inevitable consequence of delaying his opportunity to be brought to trial and perhaps having his detention come to a conclusion.

The government's discovery approach in this case seriously prejudices a defendant's right to forego the filing of unnecessary pretrial motions and to be brought to trial within seventy days of arraignment. It undermines the effective administration of the Speedy Trial Act and the administration of justice. A defendant in pretrial detention is put in the position of having to choose between two things to which he is clearly entitled: a speedy trial and the chance to be released from pretrial detention, and important impeachment evidence the disclosure of which is supposed to be "routine and automatic."

On the unique facts of this case—a defendant who files absolutely no motions, a violation of the Speedy Trial Act, a government policy of requiring a defendant to take the initiative to obtain important impeachment evidence to which he is automatically entitled—and notwithstanding the very serious nature of defendant's alleged criminal conduct, had all of this information been available to the Court on March 6, 1987 when it considered defendant's motion to dismiss the original indictment, the Court would have ordered the dismissal be with prejudice. In light of the fact that information about the government's discovery violation was not known to the defendant or the Court at the time the earlier motion to dismiss was before the Court, reconsideration of the March 6, 1987 Order is now appropriate.[5]

## III. CONCLUSION

Upon reconsideration, the Court determines that the original indictment should have been dismissed with prejudice. The instant indictment, therefore, being barred by the dismissal of the original indictment, is DISMISSED.

It is so Ordered.

---

**3.** However, if the Court had not dismissed the original indictment for Speedy Trial grounds and had the defendant pleaded guilty (as everyone was expecting) without ever knowing of the payment to the confidential informant, a serious miscarriage of justice would have occurred.

**4.** There do not appear to be any reported cases specifically discussing the relationship between automatic discovery and the Speedy Trial Act.

**5.** At oral argument, the Court invited the parties to respond to what other sanctions, short of dismissal, the Court could impose. The government has not suggested any.