### UNITED STATES of America, Appellant,

### v.

### Kenneth S. HASTINGS, Defendant, Appellee.

### No. 87–1782.

United States Court of Appeals, First Circuit.

Heard Jan. 4, 1988.

Decided May 17, 1988.

Rehearing and Suggestion for Rehearing In Banc Denied; Mandate Constructively Recalled and Constructively Reissued June 21, 1988.

Patty Merkamp Stemler, Appellate Section, Crim. Div. Dept. of Justice, Washington, D.C., with whom Frank L. McNamara, Jr., U.S. Atty., Boston, Mass., was on brief, for appellant.

Linda J. Thompson with whom Myles Jacobson and Thompson, Thompson, Nagel & Jacobson, Springfield, Mass., were on brief, for defendant-appellee.

Before CAMPBELL, Chief Judge, and BREYER and SELYA, Circuit Judges.

SELYA, Circuit Judge.

On December 17, 1986, a federal grand jury charged defendant-appellee Kenneth S. Hastings with seven counts of possession of cocaine and methamphetamine with intent to distribute and one count of possession of a firearm during commission of a felony. *See* 21 U.S.C. § 841(a)(1); 18 U.S.C. § 924(c). A February 23, 1987 trial date was cancelled because no judge was available. This deferral soon brought the Speedy Trial Act (Act), 18 U.S.C. §§ 3161–3174, into play. When seventy days next following indictment had elapsed without commencement of trial, Hastings moved to dismiss under 18 U.S.C. § 3162(a)(2). Finding no excludable time, the district court dismissed the charges because of the delay, as required by the Act. *See id.* The court decreed that the dismissal would be without prejudice. *United States v. Hastings,* 667 F.Supp. 888 (D.Mass.1987) (*Hastings I*).[1]

The grand jury wasted little time in reindicting appellee on substantially the same charges, adding one more drug count. During arraignment, it came to light that the government had thimblerigged its discovery responses in the original case. Hastings filed a flurry of motions, including one which asked the district court to reconsider its March 10 order. Concluding in effect that revelation of the discovery violation warranted conversion of the dismissal to one "with prejudice," the court obliged. *United States v. Hastings,* 667 F.Supp. 888, 894 (D.Mass.1987) (*Hastings II*). Consequently, reprosecution was blocked.

The United States appeals, arguing that the breach of discovery rules was separate and apart from, and wholly unrelated to, any actual delay engendered in the course of Hastings's case—a point on which there can be no founded dispute—and thus, could not justify dismissal on speedy trial grounds. We agree. Although we share the district court's well-articulated indignation at the prosecution's cavalier approach to criminal discovery, we are persuaded that it was error to dismiss with prejudice under the Act.

I

We begin our exposition with a bit of history. In 1974, the United States District Court for the District of Massachusetts adopted a "Uniform Order for Automatic Discovery in Criminal Cases." This uniform order was intended to facilitate discovery, to shorten the time spent litigating run-of-the-mine pretrial matters, and to conserve the resources of the court and the parties. One important objective was to expedite the trial process. Prior to Hastings's first indictment, the basic features of the uniform order were translated into a local rule of court, which provided in pertinent part:

> In all criminal cases, the following material and information in the possession, custody or control of the parties, the existence of which is known, or by the exercise of due diligence may become known, to the attorneys for the parties, shall be disclosed to the opposing party.
>
> Such disclosure will be routine and automatic, i.e., without any court order in the particular case. It should occur as soon as counsels' trial engagements permit and in all events without fourteen (14) days after arraignment.

1. The facts underlying the delay are essentially as follows. Appellant was arrested on November 20, 1986 and temporarily detained. On November 25, following a hearing, he was held pending trial. Hastings was arraigned on the date the indictment was returned (December 17, 1986). For purposes of 18 U.S.C. § 3161(c)(1), the speedy trial clock began to tick at that juncture. Trial was set for February 23, 1987 but was not held because the judge was on vacation. The prosecutor, who knew of the judge's plans, had neglected seasonably to protect the record, and the court had not entered a continuance. On March 3, Hastings moved to dismiss the indictment on speedy trial grounds (thus stopping the clock some 76 days after it started).

The district judge held a hearing on March 6, dismissed the indictment, and released Hastings from detention. Since no time between December 17, 1986 and February 25, 1987 was excludable, the Act's 70 day deadline had been exceeded by some five days.

(a) The Government shall disclose, and allow the defendant to inspect, copy and photograph, all written material as follows:

\*    \*    \*    \*    \*    \*

(7) If any promises, rewards, or inducements have been given to any witnesses, a written statement of such promises, rewards or inducements

D.Mass.Loc.R. 42.

Despite the fact (now conceded) that an informant was paid and told he might receive further payments, the monition of Local Rule 42 failed to spark the prosecution's interest in Hastings's case. Neither the local rule nor the uniform order nor the entry of the latter in the case docket made much of an impression upon the United States Attorney's office (USAO). During the currency of the original indictment, the USAO deigned to furnish Hastings only the following information on the subject:

Pursuant to the Uniform Order for Automatic Discovery issued by the Court in the above matter on December 17, 1986, the government provides you with the following:

\*    \*    \*    \*    \*    \*

9. If any promises, rewards or inducements have been given to any witness that the government intends to call as a witness during trial of this case, you will be advised of same prior to the testimony of that witness.

For reasons which defy logical explanation, defendant did not immediately object to this response, nor did he file a motion or otherwise bring the nonanswer to the court's attention. When the court dismissed the indictment without prejudice because the speedy trial period had run, it was unaware of the government's highhanded tactic.

During arraignment on the new indictment, however, the balloon went up. The magistrate inquired whether the government had provided "automatic" discovery.

When the prosecutor replied in the affirmative, defense counsel pointed out that the disclosure was patently inadequate as to promises, rewards, and inducements. It took the magistrate little time to see that this was so. He directed the government to obey Local Rule 42 and supply meaningful discovery. The rejoinder was less than fully informative. In relevant part, the USAO stated:

(4) *Records [sic] and Inducements*

The individual who assisted the government during its investigation of the defendant received $1,150.00. The Drug Enforcement Administration has also informed said individual that it may receive additional funds in the future. No other promises, records [sic] or inducements are known to have been provided.

Deeming this response too vague and uncertain, defendant sought further "automatic" discovery under the local rule. The prosecutor balked, refusing to supplement the reply without a court order requiring him to do so. It was at this juncture that Hastings simultaneously brought the motion for reconsideration of the dismissal and a flock of other motions, including a motion to compel the additional discovery, a motion to dismiss the second indictment, and a motion for sanctions.

While these motions were under advisement, the plot thickened. After digging through several layers of lame prosecutorial excuses, it became all too clear that the government's reluctance freely to furnish automatic discovery materials was chronic. The nonanswer spun to Hastings, it turned out, was the standard response provided by the USAO in criminal cases.[2] This had the effect of standing the local rule on its head. The follow-on response could plausibly be viewed as a second link in the same rusty chain; there was evidence that the USAO, after being forced to admit that a rewarded informant was involved, routinely attempted to keep the informant's identity from the defense (whether or not there was any

---

**2.** We cannot tell with assurance whether this malaise was district-wide or endemic only to cases prosecuted in the Springfield division. How widespread the practice may have been would not, however, affect our present inquiry; even if only the Springfield sitting was implicated, that was quite plainly one sitting too many.

sound basis for claiming such confidentiality). In short, although "automatic" discovery was contemplated, the USAO admitted that it deliberately shifted the balance and placed the onus on the accused to take action (say, by moving for a court order) in order to obtain information which he was entitled to receive as of right.

Once this sorry state of affairs had been dragged into the sunlight, the district court acted. It treated the USAO's machinations as comprising a speedy trial problem, reasoning that subversion of Local Rule 42 could well result in trial delays. A defendant denied automatic discovery in this fashion would be placed snugly between a rock and a hard place: he could either forgo discovery to which he was entitled or he could file a motion to obtain it, thus stopping the speedy trial clock and easing the pressure on the government to bring him to trial.[3] By forcing the accused to open a window of prosecutorial opportunity for excludable delay, the USAO's routine evasion of Local Rule 42, in theory, could effectively circumvent the Act's time limitations. And such a practice would be particularly invidious with respect to a defendant who, like Hastings, was being detained pending trial.

The district court acknowledged that because Hastings had not taken the bait—defense counsel abjured the filing of any motions in respect to discovery—the government's gamesmanship had not gained it any time in this case. Rather, trial was delayed beyond the temporal limit due to wholly unrelated matters. *Hastings II*, at 895. The court observed that the violation of Local Rule 42 alone would not warrant dismissal of the indictment with prejudice, *id.* at 900, and that the accused

had suffered no cognizable harm. *Id.* Nonetheless, the court revised its earlier finding of the USAO's good faith, and concluded that the Act and the administration of justice had been undercut. The district judge rightfully excoriated the government's conduct and stated unequivocally that he would have dismissed the original indictment with prejudice had he known the entire story. *Id.* at 900. Noting the systemic threat which the USAO's repeated use of vulpine discovery tactics posed, the court rectified its earlier "mistake" by barring reprosecution. *Id.* at 900.

## II

The Act represents a point at which a variety of interests converge. For somewhat different reasons, perhaps, society, the prosecution, the accused, and the courts as an institution have a shared stake in bringing criminal charges to the bar of justice as promptly as practicable. The defendant's interest in a speedy trial is well documented.[4] The Act, which enhances and protects this private interest, was designed simultaneously to serve a broader range of concerns. For one thing, the public has a stake in prompt trials. This flows in part from society's general interest in resolving the guilt or innocence of those accused of crime rapidly (consistent with fundamental fairness) and punishing those found to be guilty. *See Barker v. Wingo*, 407 U.S. 514, 522 n. 16, 92 S.Ct. 2182, 2188 n. 16, 33 L.Ed.2d 101 (1972) (public has an "interest in trying people accused of a crime rather than granting them immunization because of legal error") (citation omitted). In more senses than one, justice delayed is justice denied.

---

**3.** *Inter alia,* the Act stipulates:

The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:

(1) Any period of delay resulting from other proceedings concerning the defendant including but not limited to—

\* \* \* \* \* \*

(F) delay resulting from any pretrial motion, from the filing of the motion through the

conclusion of the hearing on, or other prompt disposition, of such motion; ....
18 U.S.C. § 3161(h)(1)(F).

**4.** Indeed, an accused's right to be tried without undue delay is of constitutional dimension. *See* U.S. Const., Amend. VI ("accused shall enjoy the right to a speedy and public trial"); *Klopfer v. North Carolina*, 386 U.S. 213, 223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1 (1967) (describing right to speedy trial as "fundamental"). The Act increases a defendant's speedy trial safeguards beyond the constitutional minima.

There are other reasons, too, which undergird the public interest:

A speedy trial is necessary to preserve the means of proving the charge, to maximize the deterrent effect of the prosecution and conviction, and to avoid, in some cases, an extended period of pretrial freedom by the defendant during which time he may flee, commit other crimes, or intimidate witnesses.

A. Partridge, *Legislative History of Title I of the Speedy Trial Act of 1974* 12 (1980) (Partridge) (citation omitted). *Accord United States v. Caparella,* 716 F.2d 976, 981 (2d Cir.1983). In a nutshell, then, the Act promulgates a temporal framework which is thought to advance both the public and private interests in the fair—but expeditious—trial of criminal cases.

■ The linchpin of the Speedy Trial Act is a provision requiring that an accused be brought to trial within seventy days after indictment, information, or first appearance before the court. 18 U.S.C. § 3161(c)(1). If trial does not commence within the speedy trial period, as enlarged by certain excludable intervals, *see* 18 U.S.C. § 3161(h), and the defendant so moves, the court must order dismissal. 18 U.S.C. § 3162(a)(2). Nevertheless, the judge has discretion to decide whether reprosecution will be barred. *United States v. Brown,* 770 F.2d 241, 242–43 (1st Cir.1985), *cert. denied,* 474 U.S. 1064, 106 S.Ct. 816, 88 L.Ed.2d 789 (1986). In considering the question, he must start from a level playing field; there is no presumption either way. *Id.* at 243–44.

■ The Act identifies three elements that must be considered "among others" in deciding whether to dismiss with or without prejudice: the gravity of the charged crimes; the circumstances leading to dismissal; and the impact of reprosecution *vel non* on the administration of justice and of the Act. *See* 18 U.S.C. § 3162(a)(2). This construct was intended as a compromise, gleaned from many sources and addressed to diverse constituencies. *See generally* Partridge, *supra,* at 197–218. We are satisfied, based on the historical record, that the three-pronged test was crafted to encourage judges to weigh both private and public interests when determining whether or not to foreclose reprosecution. *See Caparella,* 716 F.2d at 978–81 (analyzing legislative history). The omnibus clause of section 3162(a)(2), of course, allows a court to widen the lens of inquiry, but only slightly. Any extraneous matters to be considered must be rationally related to the balancing objectives of the tripartite test. Thus, a district court may factor into the Act's calculus, for example, items such as the length of the delay and the prejudice to the defendant stemming from the violation (or conversely, the absence of prejudice). *See Brown,* 770 F.2d at 245. *Accord United States v. Bittle,* 699 F.2d 1201, 1208 (D.C.Cir.1983). The approach, ultimately, is discretionary, permitting the trial judge to examine a variety of serviceable fabrics and measurements, and custom-tailor an order of dismissal to suit the exigencies and equities of a particular case.

It is apodictic that the court's discretion in synthesizing these items, while broad, is not unlimited. "An abuse of discretion occurs when a relevant factor that should have been given significant weight is not considered, when an irrelevant or improper factor is considered and given significant weight, or when all proper and no improper factors are considered, but the court in weighing those factors commits a clear error of judgment." *United States v. Kramer,* 827 F.2d 1174, 1179 (8th Cir.1987). As we have said before, "discretion, as the term implies, necessarily speaks to degrees, not to absolutes." *Aggarwal v. Ponce School of Medicine,* 745 F.2d 723, 726 (1st Cir.1984).

Given this tablesetting, we turn to the bill of fare.

### III

The United States does not seriously contest the propriety of casting aside the original indictment. The plain fact is that trial did not start within the statutory period. *See supra* note 1. The question, therefore, is whether ordering the dismissal to operate with prejudice was supportable. In our attempt to answer this query, we explore

the pertinent criteria to ascertain if there was sufficient room for the court, in the sound exercise of its (not illimitable) discretion, to foreclose all future prosecution. In the idiocratic circumstances of this case, the analysis, as we shall see, ineluctably reduces to the critical issue of whether the USAO's manhandling of the automatic discovery principle had a relevant nexus to the speedy trial gaffe and could properly be used as a stanchion supporting dismissal with prejudice.

A. *Offense Severity.* Hastings was indicted on a potpourri of drug and weapons charges. As the district court noted, he "was alleged to have been in possession of significant amounts of controlled substances on four occasions." *Hastings I,* 667 F.Supp. at 892. More ominously still, he was "armed with a concealed semiautomatic pistol loaded with live ammunition...." *Id.* at 893. The district court found the charged crimes "extremely serious." *Id.* at 893. The characterization, we think, is unassailable.

This aspect of the test centers primarily on society's interest in bringing the particular accused to trial. The graver the crimes, the greater the insult to societal interests if the charges are dropped, once and for all, without a meaningful determination of guilt or innocence. It is impossible to deny the heightened public interest in adjudicating felonies of this sort on the merits. By their very nature, drugs-for-profit offenses are extremely serious. The presence of several such charges in this case, therefore, militates strongly against dismissal with prejudice. *See United States v. May,* 819 F.2d 531, 534 n. 15 (5th Cir.1987) (collecting representative cases); *United States v. Simmons,* 786 F.2d 479, 485 (2d Cir.1986) (drug charge involving "relatively small quantity of heroin" serious within meaning of section 3162); *Brown,* 770 F.2d at 244 (offenses involving four ounces of cocaine "undeniably serious"). The firearms charge, of course, lent added gravity to an already somber situation. The severity prong points directly toward dismissal without prejudice.

B. *The Road to Dismissal.* Next, we scrutinize the circumstances which gave rise to the speedy trial violation. This aspect of the test focuses on the culpability of the delay-producing conduct. The pendulum swings in two directions: sometimes the defendant may be to blame; other times, the government. This appeal involves no delay-producing actions attributable to Hastings, so we need not explore that path. Where, as here, the delay-causing conduct is attributable to the sovereign (the court or the prosecutor), it inveighs progressively in favor of the accused. As we see it, the appropriateness of barring reprosecution increases in relatively direct proportion to the degree of culpability which attaches. Accordingly, delay which results either from intentional noncompliance with the Act or from actions designed to gain unfair prosecutorial advantage weighs heavily in favor of dismissal with prejudice. *See United States v. Kramer,* 827 F.2d at 1177; *United States v. Simmons,* 786 F.2d at 485–86.

Closely allied to such examples, but perhaps once removed, are recurrent shortcomings. If delay is occasioned by a pattern of governmental inattention or because the prosecutor, like a recalcitrant schoolboy, fails to learn oft-repeated lessons, the situation becomes more conducive to dismissal with prejudice than if delay stems from some solitary bevue. *See United States v. Salgado Hernandez,* 790 F.2d 1265, 1268 (5th Cir.) (if prosecution "regularly or frequently fails to meet the Act's time limits," court may properly take that into consideration), *cert. denied,* —— U.S. ——, 107 S.Ct. 463, 93 L.Ed.2d 408 (1986); *Kramer,* 827 F.2d at 1177 (same). At yet a further remove are cases like this one, where an isolated instance of administrative oversight was the root cause of the trial delay. Random negligence, while not to be condoned, is less blameworthy than purposeful misconduct or recurrent transgressions, and weighs less heavily in favor of banning reprosecution.

This case could well have been draped in the blackest of shrouds: the government's willful failure to provide automatic discovery could have required deferral of trial under easily envisionable circumstances.

Yet, such a contingency never came to pass. Despite the downside potential, the actual delay was wholly unrelated to the discovery violation. As the district court found, the prophylaxis of the Act had been riven by "the unavailability of the Court and the progress of plea negotiations." *Hastings II*, at 895. No evidence was presented to show that the USAO's benighted discovery policy affected the course of this case or that it chronically, frequently, or even occasionally caused trials to stray beyond the perimeters of the Act. Nor was there any demonstration that a time had come when the practice had actually (as opposed to theoretically) threatened to lead to that result.[5] In sum, the situation at bar was one where the government had failed but once—and for reasons not attributable to prosecutorial misconduct—to meet the speedy trial deadline. Whatever misguided discovery practices the USAO might have condoned, it was nothing more than oversight and lack of judgepower which caused the delay, and hence the dismissal, in Hastings's case.

We do not shrug off such matters. Neglecting to heed established time limitations and lack of attention in their observation are wrong—perhaps doubly so when laid at the government's doorstep in a criminal case. But circumstances of this sort, standing alone, do not warrant dismissal with prejudice of serious criminal charges. *See United States v. Melguizo*, 824 F.2d 370, 372 (8th Cir.1987) (administrative neglect on part of USAO not sufficient to justify barring reprosecution for serious offense), *pet. for cert. filed*, 56 U.S.L.W. 3371 (Oct. 3, 1987) (No. 87–551); *United States v. May*, 819 F.2d at 534 & n. 12 (negligence—as opposed to intentional foot-dragging—weighs in favor of dismissal without prejudice); *United States v. Bittle*, 699 F.2d at 1208 (similar); *cf. United States v. Caparella*, 716 F.2d at 980–82 (oversight and administrative negligence

may justify dismissal with prejudice if offense not serious).

As with the first, the second prong of the test points toward dismissal without prejudice.

C. *Impact of Reprosecution.* As we noted earlier, the right to a speedy trial is significant as much for the protection it confers upon society's interest in bringing criminals promptly to the bar of justice as for the protection it confers upon those accused of crime. This furculum of the section 3162(a)(2) trilogy is itself divided into two parts. The first tine—impact on the administration of justice—presents the court with the opportunity to consider the practical consequences of allowing or barring reprosecution, and to place generalized public and private interests onto the scales, in broad perspective. The second tine—impact on the administration of the Act—provides the same opportunities, but in a narrower focus: the specific goal of assuring speedy trials. We address both aspects.

### 1. *Administration of Justice*

In this case, we believe that the first tine of the third prong comforts the appellant. We recognize that whenever government—for whatever reasons—falls short of meeting the Act's requirements, the administration of justice is adversely affected. Nevertheless, Congress deliberately eschewed creating a presumption favoring dismissal with prejudice for each and every violation of the Act. And in the absence of a *per se* rule, we find no basis for concluding on these facts—serious criminal deportment, a tiny delay attributable to an administrative snafu, and no special prejudice (*see infra* Part III(D))—that reprosecution would countervail the administration of justice.

Although an argument can be made that the administration of justice, generally, would be well served by quashing this prosecution and thereby teaching the

---

5. At the hearing in district court, the government admitted that the USAO's standard procedure was to throw sand in the gears of automatic discovery in the manner which we have described. But no evidence was adduced of even

a single instance where the praxis, disreputable though it was, led to a violation of the Act or to actual prolongation of the pendency (untried) of an indictment.

government a deserved lesson, that is not a part of the balancing the Act contemplates. The key is that the "lesson plan" which the accused seeks to advance relates not to speedy trials, but to the avoidance of shabby discovery practices. That is to say, the misconduct of which the USAO appears guilty—flouting the automatic discovery principle and in that way handing defendants the short end of the stick—was entirely separate and apart from the actual delay. It did not cause the speedy trial overrun in this case (or, for that matter, in any other identified case).

The absence of any causative link between the government's truly blameworthy behavior and the speedy trial infraction is, we think, supremely important. The Act, after all, is a sentry designed to guard a particular set of gates; it cannot be transformed into a knight errant, riding across the landscape to do battle with evils essentially unrelated to the speedy trial paradigm. The caselaw, as we read it, is in accord. *See United States v. Phillips,* 775 F.2d 1454, 1456 n. 2 (11th Cir.1985) (where government's discovery delinquencies not causally connected to speedy trial violations, they cannot be counted against prosecution in section 3162 balancing). *See also United States v. Kramer,* 827 F.2d at 1178 (approving *Phillips* causal connection rationale); *cf. United States v. Hoffman,* 832 F.2d 1299, 1303–04 (1st Cir.1987) (witness intimidation attributable to prosecutor will not support sixth amendment claim unless it has caused loss or erosion of material testimony).

Hastings argues, in effect, that the pattern of discovery violations permitted an imputation of bad faith in the precincts patrolled by the Act.[6] The proposition, at one and the same time, proves too much and too little. It proves too much because, if true, then every speedy trial overrun

would require searching the case record as a whole to ascertain whether some different and unrelated misconduct formed a surface from which bad faith could ricochet. In that event, the Speedy Trial Act would become an all-encompassing code of ethical conduct for prosecutors—an idea far more grandiose than Congress planned. On the other hand, Hastings's suggestion proves too little because, if true, it overlooks the absence of the necessary cause-and-effect nexus. To accept it would require that we abandon wonted notions of causation and statutory interpretation, and loose some strange and capricious beast to roam through criminal courtrooms.

There is a further reason, too, which counsels persuasively in favor of a causal connection requirement. To take punitive action addressed to misconduct causally unrelated to any actual speedy trial infraction would be tantamount to sanctioning dismissal of cases for prosecutorial misconduct. That is a rocky road to travel where, as here, no harm has befallen defendant in consequence of the improper acts. *See United States v. Hasting,* 461 U.S. 499, 506–07, 103 S.Ct. 1974, 1979, 76 L.Ed.2d 96 (1983) (supervisory powers may not be invoked to vacate conviction where prosecutor's behavior, though reprehensible, was harmless); *United States v. Blue,* 384 U.S. 251, 255, 86 S.Ct. 1416, 1419, 16 L.Ed.2d 510 (1966) (though evidence obtained in derogation of fifth amendment, indictment should not be dismissed as a sanction); *United States v. Ramos Algarin,* 584 F.2d 562, 565 (1st Cir.1978) ("government misconduct does not warrant reversal if it is harmless"); *but see United States v. Ballivian,* 819 F.2d 266, 267 (11th Cir.1987) (per curiam) (substantial threat of prejudice or "pattern of widespread and continuous misconduct" may justify dismissal). This

---

**6.** The Ninth Circuit has recently held that bad faith and a "lackadaisical" attitude justifies dismissal with prejudice, notwithstanding that the crime is serious and the delay inconsequential. *See United States v. Taylor,* 821 F.2d 1377, 1385 & n. 11 (9th Cir.1987), *cert. granted,* — U.S. ——, 108 S.Ct. 747, 98 L.Ed.2d 760 (1988). We disagree with this kind of categoric approach to the matter. Such a holding necessarily fails to

place seriousness of the crime and length of delay into the balance as intended by the Act. Even where bad faith has a causal nexus to actual trial delay and therefore becomes a factor which can enter into the balance, a trial court must also consider the other factors stipulated in the Act. *See United States v. Fountain,* 840 F.2d 509 (7th Cir.1988).

rocky road is a road which we believe to be closed on this appeal because the Speedy Trial Act, as we interpret it, demands a causal nexus between misconduct and trial delay in order to justify reliance on the former in barring reprosecution under section 3162(a)(2).

Leaving aside the question of whether the case could arguably be dismissed for prosecutorial misconduct as such—a question as to which we take no view—the "administration of justice" furnishes no basis to predicate dismissal *under the Act* on the prosecutor's chronic abuse of the automatic discovery rules.

### 2. *Administration of the Speedy Trial Act*

It is in considering the second aspect of the third prong, however, that Hastings's plea takes on its most seductive light. In certain factual situations the USAO's discovery policy, as a theoretical matter, might well force an accused to choose between a speedy trial and obtaining important impeachment information. If an impermissible delay resulted from such shenanigans, dismissal with prejudice would probably conduce to the due administration of the statute. By entering such an order, the court would sound a tocsin: the judicial system will not tolerate willful, dilatory conduct which results in crossing the Act's well-marked frontiers into forbidden territory. Without question, a delay caused in such an intolerable way offends both the public and private interests in speedy trials. But the short answer to these perorations

is that the worst-case scenario is not Hastings's case and does not reflect his predicament. Here, the prosecution's conduct, vile though it may have been, did not result in, or even contribute to, postponement of the trial. The delay was, as we have said before, attributable to administrative neglect.

Even where no delay has been recorded, the potential harm inherent in the USAO's policy is of major concern.[7] On this basis, Hastings succeeded in persuading the district court that a message should be sent. Yet theoretical prejudice alone is, we think, too fragile a reed to support "with prejudice" dismissal—at least where the charges are grave and the delay fribbling. The absence of actual harm—of an authentic delay attributable to the government's misconduct—undercuts the trial judge's authority properly to send this particular message *under the aegis of the Act*.[8]

It is important, we believe, that the Act provides a set of defined sanctions to be employed where counsel for either side plays an outlaw game.[9] It is noteworthy that such sanctions can be levied whether or not a violation of the Act's time limits has occurred. The presence of these remedies erodes the force of appellee's argument. *Cf. United States v. Hasting*, 461 U.S. at 506 n. 5, 103 S.Ct. at 1979 n. 5 (discussing deterrence of prosecutorial misconduct by means short of dismissing charges). Unlike outright dismissal with prejudice, the alternate available means are sculpted to permit the court to safeguard

---

**7.** We note for the record that the district court eventually received assurances that the USAO's practices had been revised. While this may be of some small consolation, it does not excuse what went before.

**8.** We agree fully with the district court that it would have been an intolerable travesty had the defendant pled guilty before learning about the rewards and inducements evidence which the government possessed. *Hastings II*, at 900 n. 3. But notwithstanding the parade of horribles that could have developed, none did. The travesty did not occur.

**9.** 18 U.S.C. § 3162(b) provides in material part: In any case in which counsel for the defendant or the attorney for the Government ... (2) files a motion solely for the purpose of delay

which he knows is totally frivolous and without merit.... (4) otherwise willfully fails to proceed to trial without justification consistent with section 3161 of this chapter, the court may punish any such counsel or attorney as follows:

     *    *    *    *    *    *

(C) by imposing on any attorney for the Government a fine of not to exceed $250.

(D) by denying any such counsel or attorney for the Government the right to practice before the court considering such case for a period of not to exceed ninety days; or

(E) by filing a report with an appropriate disciplinary committee.

the process and to vindicate judicial authority, while at the same time allowing both the defendant's rights and the public's interest in having guilt (or innocence) resolved to be respected. Congress afforded the courts a way to take effective action while at the same time retaining the baby —instead of throwing him out with the bath water. Having been provided an avenue to punish misdeeds which threaten— but do not cause violations of—the Speedy Trial Act, there is much less need for the judiciary to stretch the statutory dismissal test in a misshapen endeavor to contain such abuses.

For these reasons, we conclude that, in examining the effect of alternate modes of dismissal on the administration of the Act, the trial court should not have factored the government's gameplaying with automatic discovery into the speedy trial calculus. As in *United States v. Kramer*, this is a situation where "[d]ismissal with prejudice ... lacks any prophylactic effect as this is not a case where the court needs to deter repetition of prosecution actions which led to ... violations of the Act, since none did." 827 F.2d at 1178.

Like the other prongs of the test, then, the third prong—in both its aspects—points toward a dismissal which will permit reprosecution.

D. *Miscellaneous Factors.* Before leaving the subject, we look to see if any factors cognizable under the omnibus clause of 18 U.S.C. § 3162(a)(2) sway the result. Here, two additional items—the extent of actual prejudice and the length of the delay—merit attention. These elements are virtually self-explanatory. The greater the prejudice to a particular defendant in consequence of a particular delay, the greater the justification for barring reprosecution. The length of the delay can be seen as a closely aligned factor: stretching delay to greater and greater extents tends ineluctably to provoke prejudice. Witnesses move or perish, memories grow dim, defense costs escalate, and the bottomless resources of the prosecution can be brought ever-increasingly to bear. To some extent, then, a lengthy delay can be seen as a proxy for direct proof of actual prejudice. But in this case, neither criterion suggests dismissal with prejudice.

Hastings has made no credible argument that he was actually prejudiced by the five day overrun. One reason, of course, is that so brief a delay is unlikely to—and in this case did not—materially hamper a defendant. There was no hint of lost evidence or hindrance stemming from cancellation of the planned trial. To be sure, *any* delay may prolong pretrial detention and postpone (even ever so slightly) defendant's chance to clear his name. But in this case, as in *United States v. Salgado–Hernandez*, 790 F.2d at 1269, "the harm was minimal." The district court's finding that the accused was not materially prejudiced, *Hastings II*, at 900, cannot be faulted.

■ So, too, the proxy for actual prejudice. The better-reasoned caselaw indicates that, when the charged crimes are serious, only an equally serious delay can justify dismissal with prejudice. *United States v. Salgado Hernandez*, 790 F.2d at 1268; *United States v. Simmons*, 786 F.2d at 485; *United States v. Phillips*, 775 F.2d at 1455–56; *but cf. United States v. Taylor*, 821 F.2d at 1385–86. The time limit was exceeded by five days in this case. *See supra* note 1. Other concerns would have to militate very strongly against reprosecution before such a brief holdup could justify dousing serious charges forever. *Compare United States v. Brown*, 770 F.2d at 244 (thirty-five day delay does not warrant "with prejudice" dismissal where crime serious) *with United States v. Russo*, 741 F.2d 1264, 1267 (11th Cir.1984) (delay of several months sufficient to bar reprosecution even though crime serious). In fine, the miscellaneous considerations (brevity of delay and absence of cognizable prejudice), like the three main prongs of the test, incline in the government's favor.

IV

We sum up briefly. All of the factors which could properly be scrutinized under the Act bespeak allowing charges to be reinstituted against Hastings. In ruling on the defense's initial motion, the district

court weighed those factors—appropriately, we think—and ordered the dismissal to operate without prejudice. *See Hastings I,* at 892–93. It found specifically that reprosecution "would not have serious [adverse] effects on the administration of the [Speedy Trial] Act or on the administration of justice...." *Id.* at 893. The only circumstance that changed between the time of that ruling and the filing of the reconsideration motion was the revelation of the discovery violations. Yet, nothing which the USAO did (or neglected to do) during the course of pretrial discovery meaningfully augmented the inquiry mandated by the Act. The record admits of no causative link between the misconduct and the failure of a speedy trial in this or any other actual case. Therefore, the pattern of discovery infractions should not have affected the balancing demanded by the Speedy Trial Act. It follows inexorably that the district court erred in commingling its well-warranted distaste for the USAO's tactics —tactics which did not contribute one whit to the speedy trial overrun—with the elements suitably to be considered under section 3162(a)(2). In our judgment, neither the administration of justice, generally, nor the administration of the Speedy Trial Act, in particular, would be ameliorated by an order permitting the defendant to go scot free.

We need go no further. Because the court below gave significant weight to an inappropriate factor and reached a result which, by its own admission, would be insupportable but for that factor, *see Hastings I,* at 892–93, we conclude that the first indictment was properly dismissed without prejudice and that the motion to reconsider should have been denied. Accordingly, we reverse and remand for further proceedings consistent herewith. Since there is no longer a legal bar to Hastings's reprosecution, the second indictment should be reinstated for trial.[10]

*Reversed and remanded.*

10. The district court did not pass upon appellee's motions to impose sanctions or dismiss the later indictment for prosecutorial misconduct.

BREYER, Circuit Judge (dissenting).

The majority evidently believes that the district court either (1) considered "an irrelevant or improper factor" or (2) when weighing relevant factors, committed "a clear error of judgment." *supra* at 924 (quoting *United States v. Kramer,* 827 F.2d 1174, 1179 (8th Cir.1987)). I do not agree.

In my view, the district court could consider the government's misconduct as relevant even though it did not harm this particular defendant. The "misconduct" amounted to violating frequently a local rule that instructed the government to give defendants certain information *automatically;* instead, the government forced defendants either (a) to file a motion asking for the information, thereby stopping the speedy trial clock, 18 U.S.C. § 3161(h)(1)(F) (1982), or (b) to do without early access to the information. This kind of rule violation may harm other defendants to whom the local rule applies, in ways related to the Speedy Trial Act, but which do not directly involve a violation of that Act (*e.g.,* some defendants may forego early access to the information). Where governmental misconduct is serious, courts sometimes dismiss indictments even though the defendant fails to show the misconduct prejudiced him in particular. *See United States v. Ballivian,* 819 F.2d 266, 267 (11th Cir.1987) (observing that "a pattern of widespread and continuous misconduct" might warrant a dismissal of an indictment with prejudice for governmental misconduct even if defendant fails to show such misconduct seriously prejudiced him). *See also Kyle v. United States,* 297 F.2d 507, 514 (2d Cir. 1961) (Friendly, J.). Here, the misconduct is not as serious as in the cited cases, but neither does dismissal here rest on the misconduct alone; rather, what is at stake is the district court's authority to take the misconduct into account as *one* of several *relevant* factors, when deciding whether to dismiss with or without prejudice. The Act's references to "impact of reprosecution on the administration of this chapter and on the administration of justice" seem

Those motions are not before us and we intimate no view of their eventual resolution.

adequate statutory authority to place this sort of speedy-trial-related governmental misconduct in the balance.

If we concede the misconduct is relevant to the reprosecution decision, I do not see how we can say the district court made a "clear error of judgment." As a general rule, appellate courts have recognized that the district courts have considerable power to decide whether or not to permit reprosecution. I have found 29 appellate court cases decided since January 1, 1981 reviewing district court determinations to dismiss with or without prejudice; of these, only one involved a straight reversal of a district court's determination supported by reasons. *United States v. Caparella,* 716 F.2d 976 (2d Cir.1983). (Two others involved reversals where the district court failed to provide reasons for its decisions. *United States v. Kramer,* 827 F.2d 1174, 1179 (8th Cir.1987); *United States v. Phillips,* 775 F.2d 1454 (11th Cir.1985).) Moreover, the government's "misconduct" here also concerns a local rule that the district courts must administer, a matter where those courts have particular authority. Though the question seems a close one, I cannot say the district court has made a mistake of law.