**UNITED STATES,**

v.

**Earl DESSESAURE, Defendant.**

**Crim. Action No. 03cr10191–NG.**

United States District Court, D. Massachusetts.

Nov. 21, 2007.

See also 429 F.3d 359.

Robert E. Richardson, United States Attorney's, Boston, MA, for United States.

Steven Winniman, Winniman & Winniman, Springfield, MA for defendant.

## MEMORANDUM AND ORDER
## RE: SPEEDY TRIAL
## ACT DISMISSAL

GERTNER, District Judge.

This case involves the question of whether a violation of the Speedy Trial Act, 18 U.S.C. 3161(c)(1) requires an indictment's dismissal *with* or *without* prejudice. After a review of the record, which included errors by the government as well as by this Court, I conclude that a dismissal *with* prejudice is appropriate in this case. As I describe below, this is a deeply flawed prosecution—from the Boston police officer who lied in court, to the prosecutor who justified a blatantly illegal search, and then failed to act timely after the First Circuit concluded that the search could be salvaged notwithstanding the lies and the initial illegal entry. And those errors are compounded by this Court's delay in deciding defendant's motion, all the while the defendant was in jail. Given these circumstances, to allow this prosecution to continue would not advance the administration of justice; it would undermine it.

## I. BACKGROUND

On June 4, 2003, Earl Dessesaure was indicted on four charges:

1.  18 U.S.C. § 922(g)(1)—Felon in Possession of Ammunition;
2.  21 U.S.C. § 841(a)(1)—Possession with Intent to Distribute a Controlled Substance;
3.  21 U.S.C. § 841(a)(1)—Possession with Intent to Distribute a Controlled Substance; and
4.  18 U.S.C. § 924(c)(1)(A)—Possession of a Firearm in Furtherance of a Drug Trafficking Crime.

(Indictment of Earl Dessesaure, June 4, 2003, document # 7.) He has been in federal custody since his arrest, over four years.

Dessesaure filed a motion to suppress the fruits of two searches—a warrantless search of his car and a search pursuant to a warrant of his home—litigation which involved an evidentiary hearing and substantial briefing. On April 13, 2004, the defendant's motion to suppress evidence was granted in part and denied in part. *See United States v. Dessesaure*, 314 F.Supp.2d 81 (D.Mass.2004) (hereinafter *"Dessesaure I"*); *United States v. Dessesaure*, 323 F.Supp.2d 211 (D.Mass.2004) (hereinafter *"Dessesaure II"*). The search of defendant's car (and person) was affirmed, but the search of his house was not. Based on that ruling, this prosecution would have continued albeit only on charges stemming from the car search and the search incident to Dessesaure's arrest.

My suppression decision was based on two extremely troubling fact findings: First, I found that the search of Dessesaure's apartment was conducted by officers without a warrant or facts excusing a warrant under the guise of "freezing the scene." The rationale was, in a word, absurd: The officers illegally searched the house and then called back to the district attorney's office with the evidence they found in order that it may be included in the warrant application. *Dessesaure II*, 323 F.Supp.2d at 213. Second, I found that Boston Police Officer Broderick lied on the stand, in order to provide insurance in the event that the warrantless search of Dessesaure's apartment were found to be defective.[1] He contrived the story that

---

1.  I did not make that finding lightly. In *Dessesaure I*, I described in great detail why Broderick's testimony was inconsistent with the testimony of other officers on the scene, reports that were filed, and why it was of a

piece with Broderick's cavalier attitude to this investigation. *Dessesaure I*, 314 F.Supp.2d at 88. For example, Broderick based the investigation on information from informants as to whom there was no evidence of reliability,

Dessesaure yelled, "call my people/peeps" upon his arrest and prior to the apartment search, as if to signal someone in the crowd to warn his girlfriend to destroy evidence in his apartment.[2] *Dessesaure II*, 323 F.Supp.2d at 214. Accordingly, I suppressed evidence obtained from the apartment search, concluding there was insufficient probable cause to justify it with the false statements and tainted evidence excised. Moreover, given the lengths to which Officer Broderick went to gain *illegal* access to the apartment before a warrant was obtained, I concluded that it was not likely that the officers would have sought the warrant if the illegal search had turned up nothing. *Dessesaure I*, 314 F.Supp.2d at 94.

The government appealed; the First Circuit reversed, *see United States v. Dessesaure*, 429 F.3d 359 (1st Cir.2005) (hereinafter "*Dessesaure III*"), and on March 7, 2006, the mandate was issued (document # 50). The First Circuit did not question the finding that Officer Broderick had lied; it was a credibility determination and not, under the appellate standard, clearly erroneous. Nor did the First Circuit reverse the legal conclusion that one does not "freeze" a scene for Fourth Amendment purposes by actively searching it and relying on the fruits of the illegal search for a search warrant. On the contrary, the Court endorsed that finding and underscored my indignation that the argument had even been made. Indeed, the Court said:

> One other issue deserves comment. Taking it as true that the officers lied (over the government's protest that this is an unfair characterization), the district court was understandably unhappy.

The record shows more than a touch of frustration and building tension. At least some members of the Boston Police Department may have mistakenly believed that they were free, absent a search warrant or exigent circumstances, to enter a dwelling in order to 'freeze' the scene. The district court was quite correct to state strongly that this is not the law:

> There is no question that the police had no 'right to freeze' the Quincy apartment where that meant entering it, looking around, searching, all the while ostensibly waiting for someone to get a warrant. Nothing in First Circuit or Supreme Court case law remotely justifies such a step. Nor should it. Searching without a warrant, on the assumption that the magistrate will no doubt agree with the officers that there is probable cause to search that location at that time, makes a mockery of Fourth Amendment protection. The warrant, and the review it requires, is reduced to a technicality.

*Dessesaure III*, 429 F.3d at 370 (quoting *Dessesaure I*, 314 F.Supp.2d at 92.

Rather, the Court parted company with by the lower court by concluding that there was probable cause without the tainted evidence. And, more significantly, the Court found "that even if there had been no illegal entry, there is no evidence these officers would not have sought a warrant." *Dessesaure III*, 429 F.3d. at 369 (citing *Murray v. United States*, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988)). The Court applied the *Murray* test—an "objective test"—taking into ac-

---

and testified even though his notes were "discarded" ten months before the hearing. *Dessesaure I*, 314 F.Supp.2d at 85.

**2.** I also found incredible Broderick's comments about certain admissions made by the defendant during booking. *Dessesaure I*, 314 F.Supp.2d at 94.

count the officers' statements, including, apparently, Officer Broderick's testimony—as part of the totality of the circumstances.

The First Circuit decided *Dessesaure III* on November 30, 2005, and denied en banc review on February 28, 2006. Nothing further happened in this case until June 6, 2006, three months later, when defendant filed a letter requesting appointment of counsel to try to appeal the Court of Appeals decision to the Supreme Court (document # 51). The letter was obviously untimely.

During a status conference held on June 29, 2006, this Court asked the parties whether the Speedy Trial Act had been violated. The government filed a brief conceding the violation but calling for a dismissal without prejudice. The defendant filed a brief calling for a dismissal with prejudice.

This Court had the matter under advisement for far too long, in part because of its struggle with the question of when and whether to dismiss an indictment *with* prejudice. I have concluded that a dismissal with prejudice is appropriate in this case.

## I. ANALYSIS

### A. Legal Standard

The Speedy Trial Act ("STA") requires that a defendant be tried within seventy days of the latest of either the filing of an indictment or information, or the first appearance before a judge or magistrate. *See United States v. Barnes,* 159 F.3d 4, 9 (1st Cir.1998); 18 U.S.C. § 3161(c)(1). Upon violation of the STA, the statute calls for dismissal of the indictment on motion by the defendant. 18 U.S.C. § 3162(a)(2). The question is whether the indictment

should be dismissed with or without prejudice. *See id.*

█ When determining whether to dismiss the indictment with or without prejudice, this Court considers: "(1) the seriousness of the offenses; (2) the circumstances leading to the delay; (3) the impact reprosecution would have on the administration of justice and the enforcement of the Speedy Trial Act; and (4) any related miscellaneous factors, including whether the delay resulted in actual prejudice to the defendant." *Barnes,* 159 F.3d at 16 (citing *United States v. Hastings,* 847 F.2d 920, 924 (1st Cir. 1988); 18 U.S.C. § 3162(a)(2)).

### B. Speedy Trial Calculation

The government claims that the seventy-day limit prescribed by the STA was only exceeded by twenty-one days. (Pl. Br.1.) This is not accurate. The government has failed to include all of the necessary non-excludable days in its calculation.

The government only included days between the Court of Appeals mandate (March 7, 2006) and the filing of defendant's *pro se* request for an appointment of counsel (June 6, 2006).[3] This period totals ninety-one days, exceeding the seventy-day limit by 21 days. However, the government fails to include the non-excludable days that accrued prior to the government's appeal. 18 U.S.C. § 3161(h)(1)(E) states that any "delay resulting from any interlocutory appeal" shall be excluded "in computing the time within which the trial of any such offense must commence." Such time is excluded from the STA calculation, to be sure, but the clock is not reset to day one. *See Henderson,* 476 U.S. at 326–27, 106 S.Ct. 1871.

---

**3.** In this calculation, I have assumed that defendant's request for counsel is a pretrial motion. As such, the Speedy Trial Clock is tolled until the Court rules on this issue.

■ In an order dated July 22, 2003, Magistrate Judge Collings determined that between the date the indictment was returned, June 4, 2003, and August 29, 2003, there were eighteen non-excludable days (document # 12). All days between August 29, 2003, and this Courts filing of a Memorandum and Order partially granting and partially denying defendant's motion to suppress evidence on April 13, 2004, were excludable. However, there were no pending motions or stays between April 13, 2004, and May 5, 2004, and, therefore, these twenty-one days are not excludable. When all of the non-excludable days are added together, the total is 130 days. This is sixty days past the proscribed seventy-day limit.[4]

Added to the prosecutor's delay is this Court's delay in evaluating the matter, nearly a year. The time period, in short, is substantial, all the while the defendant is in jail.

## C. *Remedy for Violating the STA*

■ In evaluating whether to dismiss the indictment with or without prejudice, *see* 18 U.S.C. § 3162(a)(2), the Court considers each of the *Barnes* factors as outlined in Section A above. However, the most significant *Barnes* factor in determining the appropriate remedy in this case pertains to concerns about the administration of justice and the length of delay.

### 1. *The Seriousness of the Offenses*

The first step of the analysis is assessing the seriousness of the alleged crimes. *See Barnes*, 159 F.3d at 16. The government argues that defendant's crimes are serious, weighing in favor of dismissing without prejudice. (Gov.Br.2–3.) As the First Circuit has noted, "the graver the crimes, the greater the insult to societal interests if the charges are dropped, once and for all, without meaningful determination of guilt or innocence." (Gov. Br. 2 (citing *Barnes*, 159 F.3d at 16 (citing *Hastings*, 847 F.2d at 925))).

As a general matter, the First Circuit has held that "[b]y their very nature, drugs-for-profit offenses are extremely serious." *Hastings*, 847 F.2d at 925 (finding that seven counts of possession of methamphetamine with intent to distribute were serious, independent of a firearms charge). *See, e.g., Barnes*, 159 F.3d at 16 (finding the crime serious where defendant was charged with conspiracy to import 110 kilograms of cocaine); *United States v. Martinez*, 268 F.Supp.2d 70, 74 (D.Mass. 2003) (Gertner, J.) (finding crimes sufficiently serious to merit dismissal without prejudice where defendant was charged with one count of conspiracy to possess and distribute ecstasy and several substantive ecstasy distribution charges; noting that "there is no dispute that the drug conspiracy and distribution charges in this case, which carry heavy penalties of twenty years to life in prison, are very serious"). Likewise, the First Circuit has held that a firearms charge adds to the severity of a drug charge. *See Hastings*, 847 F.2d at 925. Accordingly, this factor tips in favor of a dismissal without prejudice.

### 2. *The Reason for the Violation*

The next factor that this Court needs to examine is the reason for the violation—whether it is intentional or inadvertent. *See Barnes*, 159 F.3d at 16. The government argues that there is no indication that the violation was the result of anything but neglect on the part of itself and

---

4. While the 130 non-excludable days is the only relevant factor for considering if the STA was violated, the actual length of the overrun is relevant for a later discussion of the factors regarding whether this case should be dismissed with or without prejudice.

of the Court. (Gov.Br.3.) As such, it argues that this factor weighs slightly in favor of dismissal without prejudice. *Id.*

The government is also correct that the second factor tips in favor of dismissal without prejudice. *See United States v. Medugno*, 233 F.Supp.2d 184, 186 (D.Mass. 2002) (citing *Barnes*, 159 F.3d at 17) (internal quotation marks omitted) (where the violation "resulted solely from neglect rather than intentional misconduct, that circumstance tips ever so slightly in favor of dismissal without prejudice"); *see also Hastings*, 847 F.2d at 925–26 ("random negligence ... weighs less heavily in favor of banning reprosecution").

### 3. *The Administration of Justice and the STA*

The government argues that dismissing this case without prejudice would facilitate the administration of justice. (Gov.Br.3–4.) It argues that because "Congress did not intend any particular type of dismissal to serve as the presumptive remedy," the facts of this case favor dismissal without prejudice. *Id.* (citing *United States v. Taylor*, 487 U.S. 326, 334, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988)). The government further argues that this case is ready for "trial or other disposition." *Id.* As such, the government argues the "effect on the administration of justice would not be excessive." *Id.* at 4.

I disagree. This was a flawed prosecution in many respects: 1) A Boston police officer lied to the Court, discarded his notes before his testimony, notes which could well have contradicted his testimony, and relied on informants whose reliability was questionable. 2) The government made a number of troubling arguments apparently ratifying that conduct—arguing that the officers had the right to "freeze" an apartment, even though that meant illegally searching it and using the fruits of that search for the warrant application. At one point, the government went so far as to suggest that this Court was wrong to impose the same standards on state officials participating in a federal investigation as on federal officials, that somehow the constitution should mean something different when state officials are concerned.[5] 3) After the appeal, the government failed to restart the prosecution in a timely fashion. 4) The Court delayed this decision for too long.

Nor is it clear that reprosecution would be as easy as the government suggests. In a letter to this Court, after the First Circuit's reversal, defendant expressed his interest in applying for *certiorari* to have the First Circuit's decision reviewed by the Supreme Court. Clearly, he missed the deadline for such a petition. The issues that would be raised by such an appeal are important: whether the second *Murray* factor (i.e., would the officers have gotten a warrant if they had not uncovered contraband during the illegal search) is a question of law or fact; and whether the First Circuit was correct in finding that the warrant would have been sought in any event where that finding was based in part on the testimony of an officer whom this Court found not credible. Defendant may well re-raise these issues should the case be reprosecuted in order to appeal them to the Supreme Court.

To allow the government to continue this prosecution, saved yet again from its own

---

**5.** "The government suggests that the Court wrongfully [sic] analyzed the local investigation as if it were the equivalent of 'an intensive, three-year DEA probe.' If by that it means that the Court applied the same federal constitutional standards to this local prosecution that it would have applied to any federal investigation, the government is correct. That is precisely the point." *Dessesaure II*, 323 F.Supp.2d at 213 n. 5.

blatant errors, would be make a mockery of the STA and the criminal justice system as a whole. This is especially true since the defendant has been incarcerated since the issuance of the indictment.

### 4. *Length of Delay and Prejudice to Defendant*

The government argues that the delay in this case does not require a dismissal with prejudice. To be sure, courts have rarely found that the length of the violation alone requires a dismissal with prejudice. *See, e.g., Barnes*, 159 F.3d at 15–16 (dismissing without prejudice for 121 day violation); *United States v. Brown*, 770 F.2d, 241, 245 (1st Cir.1985) (dismissing without prejudice for thirty-five day violation).[6] A sixty-day violation is significant on its own; however, added to this Court's delay and the fact of the defendant's ongoing incarceration, the balance is tipped in favor of dismissal with prejudice.

### II. *CONCLUSION*

The government and the Court have violated the Speedy Trial Act by failing to bring defendant to trial within seventy days of defendant's indictment. This case is hereby **DISMISSED WITH PREJUDICE.**

**SO ORDERED.**

---

6. Of the very few that have found a violation, *United States v. Rivas*, 782 F.Supp. 686 (D.Me.1992), *aff'd*, 973 F.2d 36 (1st Cir.1992), stands out. There, the district court found that the crime the defendants were charged with, possession of 500 grams of cocaine with the intent to distribute, was of "very substantial seriousness." *Id.* at 38. However, the court found that the facts leading to dismissal warranted dismissal with prejudice. *Id.* at 687. First, the violation occurred because the case "slipped through the cracks of the [c]ourt's scheduling system." *Id.* The First Circuit agreed that in certain circumstances oversight that is not caused by malice can weigh in favor of dismissal without prejudice. Next, the district court concluded that the impact of reprosecution of the defendants would be severe in this case because it would "completely negate the beneficent purposes intended to be accomplished by the Act," and, thus dismissal with prejudice was warranted.

*Id.* Again, the First Circuit found that the district court did not abuse its discretion in dismissing with prejudice.

In contrast, in *United States v. Hastings*, the district court originally dismissed the charges without prejudice. 667 F.Supp. 888 (D.Mass. 1987). However, on reconsideration, the court found out that the prosecution had a policy of repeatedly withholding its automatic discovery responses. *Id.* at 895–96. The district court determined that this weighed heavily in favor of dismissing with prejudice and changed its original ruling. *Id.* at 900. The First Circuit, however, held that the district court improperly considered the discovery violation in its STA analysis. *United States v. Hastings*, 847 F.2d 920, 930 (1st Cir.1988). After weighing all of the proper STA factors, the First Circuit held that the district court was correct in its original ruling and the case should have been dismissed without prejudice. *Id.*